(898 P.2d 665)
No. 72,516

CITY OF ARKANSAS CITY, KANSAS, *Appellee*, v. THE KANSAS DEPARTMENT OF HUMAN RESOURCES, KANSAS EMPLOYMENT SECURITY BOARD OF REVIEW, and KEVIN C. VANDERPOOL, *Appellants.*

Opinion filed July 14, 1995.

*Cortland E. Berry*, of Cortland E. Berry Legal Clinic, of Reading, for the appellant.

*Otis W. Morrow*, city attorney, for the appellee.

Before RULON, P.J., LEWIS and GREEN, JJ.

LEWIS, J.: Kevin Vanderpool was employed by the City of Arkansas City (City) as a sanitation truck driver. He was fired from that job for refusing to complete a urine test for drugs. Vanderpool filed an application for unemployment benefits with the Kansas Department of Human Resources (KDHR). The City contested his application. An examiner for KDHR found that Vanderpool was not terminated for misconduct and granted him the requested benefits. This decision was appealed to a KDHR referee. The referee basically affirmed the decision of the examiner. The decision of the examiner was appealed to the district court. The district court held that Vanderpool had refused to submit to a chemical test required by law, which constituted misconduct under K.S.A. 44-706(b)(2). The trial court denied his application for benefits. Vanderpool appeals.

Vanderpool had previously tested positive for the use of illegal drugs. As a result, the City suspended him from his job for 30 days and placed him on 6 months' probation. In order to continue his employment with the City, Vanderpool agreed to submit to random drug testing during the six-month probationary period.

On a certain day during that probationary period, Vanderpool was asked by his supervisor to submit to a drug test. He agreed to do so. Vanderpool and the supervisor then went to the hospital to have the test conducted. According to the record, Vanderpool drank water and iced tea for 2 hours and 15 minutes but was unable to provide a urine sample. Apparently, after a period of time, a certain amount of tension began to develop, and the supervisor advised Vanderpool that they would stay until the next morning if that was necessary to obtain the urine sample.

Vanderpool asked to return to the shop. The supervisor told him that if he did, it would be considered a refusal to take the test and he would be fired. Vanderpool left, and he was fired.

The question on appeal is whether Vanderpool's refusal to provide a urine sample was misconduct for which he may be denied unemployment benefits. It is important to note that we are not dealing here with whether he should be reinstated in his job. Vanderpool has been fired from his job for violation of the terms of his probation. The only issue before this court is whether he is entitled to unemployment benefits.

In the context in which we approach the question, if Vanderpool was fired for misconduct, he is not entitled to benefits; if he was not fired for misconduct, he is entitled to benefits. Misconduct, in this arena, is a term of art and is specifically defined by the following relevant portions of K.S.A. 44-706:

"An individual shall be disqualified for benefits:

. . . .

(b) If the individual has been discharged for misconduct connected with the individual's work . . . .

(1) For the purposes of this subsection (b), 'misconduct' is defined as a violation of a duty or obligation reasonably owed the employer as a condition of employment. In order to sustain a finding that such a duty or obligation has been violated, the facts must show: (A) Willful and intentional action which is substantially adverse to the employer's interests, or (B) carelessness or negligence of such degree or recurrence as to show wrongful intent or evil design . . . .

(2) For the purposes of this subsection (b), the use of or impairment caused by an alcoholic beverage, a cereal malt beverage or a nonprescribed controlled substance by an individual while working shall be conclusive evidence of misconduct and the possession of an alcoholic beverage, a cereal malt beverage or a nonprescribed controlled substance by an individual while working shall be prima facie evidence of conduct which was substantially adverse to the employer's interests. For purposes of this subsection (b), the disqualification of an individual from employment, which disqualification is required by law because the individual refused to submit to or failed a chemical test which was required by law, shall be conclusive evidence of misconduct . . . . As used in this subsection (b)(2), 'required by law' means required by a federal or state law, a federal or state rule or regulation having the force and effect of law, a county resolution or municipal ordinance, or a policy relating to public safety adopted in open meeting by the governing body of any special district or other local governmental entity. *An individual's refusal to submit to a chemical test shall not be admissible evidence to prove misconduct unless the test was required by law and the test constituted a required condition of employment for the individual's job*, or, there was probable cause to believe that the individual used, possessed or was impaired by an alcoholic

beverage, a cereal malt beverage or a controlled substance while working." (Emphasis added.)

Indeed, the issue is even more specific than earlier described. In view of the emphasized portion of the statute quoted above, we must decide whether the chemical test Vanderpool refused was one "required by law." The statute clearly provides that refusal to take a chemical test may not be admitted as evidence of misconduct "unless the test was required by law *and* the test constituted a required condition of employment for the individual's job." (Emphasis added.) No one claims that the "probable cause" section of the statute applies. There is no question that the chemical test was a required condition of employment for Vanderpool to keep his job. However, the statute provides that not only must it be a required condition of employment, it must also be a test required by law. The real issue is whether it was required by law.

The trial court found that the test was required by law. The issue on appeal is whether that conclusion was correct. "Where the trial court has made findings of fact and conclusions of law, the appellate court must determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law." *Vakas v. Kansas Bd. of Healing Arts*, 248 Kan. 589, 604, 808 P.2d 1355 (1991).

"In determining whether an employee who has been discharged for violating an employer's rule is entitled to unemployment compensation, the proper focus is whether the employee's action constitutes misconduct under K.S.A. 1988 Supp. 44-706(b), not whether the employer's rule has been violated." *City of Wichita v. Employment Security Bd.*, 13 Kan. App. 2d 729, Syl. ¶ 1, 779 P.2d 41 (1989).

The City contends that the drug test was required by the Commercial Motor Vehicle Safety Act of 1986, 49 U.S.C. § 2701 *et seq.* (1988), and/or by city personnel policy. The ultimate determination of the question depends upon the evidence developed in the record on appeal.

" 'The interpretation of a statute is a question of law and it is our function to interpret the statute to give it the intended effect. [Citation omitted.] The admin-

istrative interpretation of a statute will be given consideration and effect, but the final construction of a statute rests with the courts.'" *Churchill Truck Lines, Inc. v. Department of Human Resources*, 17 Kan. App. 2d 272, 276, 837 P.2d 1322 (1992).

At the time of Vanderpool's termination in September 1993, 49 U.S.C. § 2717(a) (Supp. V 1993) provided:

"The Secretary [of Transportation] shall, in the interest of commercial motor vehicle safety, issue regulations . . . Such regulations shall establish a program which requires motor carriers to conduct preemployment, reasonable suspicion, *random*, and post-accident testing of the operators of commercial motor vehicles for use, in violation of law or Federal regulation, of alcohol or a controlled substance." (Emphasis added.)

Regulations promulgated by the Secretary and in effect during September 1993 provided the following regarding random testing requirements:

"(a) The number of tests conducted under this section annually shall equal or exceed 50 percent (50%) of the average number of commercial motor vehicle driver positions for which testing is required to be tested under this subpart.

"(b) A motor carrier shall use a random selection process to select and request a driver to be tested for the use of controlled substances.

"(c) A driver shall submit to controlled substance testing when selected by a random selection process used by a motor carrier." 49 C.F.R. § 391.109 (1994).

49 C.F.R. § 391.85 (1994) defines "random selection process" as follows: *"Random selection process* means that drug tests are unannounced and that every commercial motor vehicle driver of a motor carrier has an equal chance of being selected for testing."

The federal statute and regulations enacted under the statute require the establishment of a program of *random* drug tests. If the test which Vanderpool refused qualifies as a *random* drug test under the law, then it would in fact be a "chemical test required by law." The only method we have of determining whether the test in question was random is to resort to the record on appeal. Certainly, the fact that Vanderpool was required to personally submit to the test as a condition of his probation and further employment does not make that test random. As quoted above, under the federal law, a test is "random" only if every motor vehicle driver for the City had an equal chance of being selected for testing. There

is no evidence in this record to support that proposition. In fact, in this case, the city personnel clerk testified:

"4. Was it [the September 20, 1993, drug test] a random test or were others tested?

"Test was done as a condition of his employment probation because he had tested positive before. Kevin was told he would be tested again during the probation period. He was the only one tested at this time.

. . . .

"6. What event occurred which caused you to believe the complainant has used, has possession of, or was impaired by controlled substance while working. Time and date?

"No event occurred, this was a retest of an employee that had tested positive before. Date 9-20-93 Time 11:00 am."

Apparently, Vanderpool was the only individual who was going to be tested at the time. This does not meet the federal definition of "random" because only Vanderpool was being given the test and none of the other truck drivers had an equal chance of being selected for testing. We conclude there is no evidence in the record to show that the drug test in question was a "random" test. Only random tests are *required* by law. This was not a random test and, therefore, was not *required by law.*

The relevant portion of the City's personnel policy reads:

"Current employees of the City may be required to submit to testing for illegal use of drugs when their behavior and/or job performance indicates their ability to perform the duties of their position is being impaired by the use of controlled substance or illegal drug or where information is provided by a reputable source that indicates usage of such drugs. Reasons for the test order and information on the tests to be conducted shall be included on the Employee Consent form.

"Refusal to submit to drug testing shall be considered misconduct subject to disciplinary action including termination."

The City does not suggest that Vanderpool's behavior or job performance indicated use of controlled substances. There is no evidence that the chemical test which Vanderpool was asked to take was required by the City's personnel policy. In fact, the evidence in this case shows that the test was not required by federal law or by the City's personnel policy but, in fact, was required by Vanderpool's personal probationary terms.

We have no choice but to conclude that the chemical test refused by Vanderpool was not *required by law.* At the very least, we have

not been referenced to any state or federal law or regulation that *required* the drug test which Vanderpool refused. As a result, under 44-706(b)(2), Vanderpool's refusal to submit to the urine test was not evidence of misconduct. No other evidence of misconduct was submitted. Since Vanderpool was not fired for misconduct within the meaning of the statute, he cannot be denied his unemployment benefits. Accordingly, the decision of the trial court is reversed.

This decision does not sanction the use of drugs or alcohol by drivers of public motor carriers. Vanderpool was fired and no longer drives for the City. That fact is neither changed nor affected by this opinion. Vanderpool, in all probability, violated the terms of his employment agreement with the City, and the City was justified in terminating his employment. Despite that fact, an employee may not be denied unemployment benefits unless he or she was fired for misconduct as that term is defined by law. The legislature has seen fit to provide that the refusal to submit to a chemical test is not evidence of misconduct unless the test was required by law *and* the test constituted a required condition of employment for the individual's job. If the legislature had chosen to employ the word "or" instead of the word "and," our decision would be different. It did not do so, however, and our job is to interpret the legislation as written. If there are those who are aggrieved by this result, the remedy, if one is desired, must come from the legislature and not from the judicial system.

The decision of the trial court is reversed, and the matter is remanded with directions to reinstate the applicable benefits to Vanderpool.

Reversed and remanded with directions.