(970 P.2d 547)
No. 78,601

TAMATHA POUNCIL, *Appellee*, v. KANSAS EMPLOYMENT SECURITY BOARD OF REVIEW and GREDE FOUNDRIES, INC., *Appellants*.

Opinion filed December 18, 1998.

*James R. McEntire*, of Topeka, for appellant.

*Michael L. Snider*, of Snider & Seiwert, L.L.C., of Wichita, for appellee.

Before ROYSE, P.J., MARQUARDT, J., and DAN D. BOYER, District Judge, assigned.

MARQUARDT, J.: The Kansas Employment Security Board of Review (Board) and Grede Foundries, Inc. (Grede) appeal the district court's order granting Tamatha Pouncil unemployment benefits.

Tamatha Pouncil was hired on July 28, 1995, and began working on July 31, 1995, as a janitor for Grede. After she was hired, and before she began working, Pouncil filled out two questionnaires relating to medical history; one was titled "Health and Medical Record" (HMR) and the second was titled "Medical and Noise History Questionnaire" (MNHQ). At the bottom of the HMR, above the signature line, it stated: "I hereby state that the information given by me on this physical exam is true and complete to the best of my knowledge. I also understand that any false infor-

mation given by me is grounds for discharge, now or later." Pouncil signed the form and dated it.

Question 1 on the HMR asked: "Have you ever been in a hospital or institution for observation, diagnosis, operation, or treatment?" Pouncil answered, "Yes," and explained that she had an "amputation of left tip of index finger." Question 8 asked: "Have you ever filed a compensation claim or received benefits as a result of an industrial injury or disease?" Pouncil answered, "No."

Approximately 2 weeks after Pouncil was hired by Grede, and approximately 1 week after she commenced her work as a janitor, she filed a workers compensation claim for carpal tunnel syndrome. Pouncil claimed "that the syndrome was either a direct result of or aggravated by her janitorial work."

At the preliminary workers compensation hearing, Pouncil stated that she had suffered no other serious job-related injuries. She also stated she had not had any other workers compensation claims. At a hearing before a workers compensation administrative law judge (ALJ) on November 16, 1995, Pouncil stated that she had received workers compensation for the partial amputation of her finger.

Pouncil's employment was terminated by Grede on March 13, 1996, because her answers at the workers compensation preliminary hearing and her medical records showed that the answers she gave on her HMR at the time she was employed were not true. Pouncil filed for unemployment compensation.

A Kansas Department of Human Resources (KDHR) examiner determined that Pouncil was terminated "for conduct or an attitude," not for misconduct or breach of a duty to Grede. The examiner ruled that she was eligible for unemployment compensation. Grede filed a timely appeal. At the hearing before the KDHR referee, Pouncil was questioned about her testimony at the preliminary hearing for her workers compensation claim. At the preliminary hearing before the ALJ, Pouncil testified concerning the loss of the tip of her finger. When asked, "Now, have you had any other Workers' Compensation claims," she answered, "No, I have not." Then she was asked, "Have you ever had an injury on the job in

any form?" She answered, "No. Other than this" (meaning her current claim against Grede).

At that same hearing, Grede then presented medical evidence that Pouncil had injured her right wrist and hand twice while working for Avery Dennison, on December 17, 1993, and again on January 6, 1994. Pouncil then stated that she thought she was off work for a period of time as a result of the December injury but could not recall exactly how long.

Medical records introduced at the KDHR hearing show that between December 17, 1993, and January 19, 1994, Pouncil had seven appointments with Dr. Wilson concerning problems with her right hand and wrist. Dr. Wilson's notes from December 17 to January 3 stated that Pouncil could "return to temporary alternate work if available." There is no record of whether Pouncil worked at all during that period. Pouncil was released to return to unrestricted work on January 4, 1994. On January 6, 1994, Pouncil told Dr. Wilson that she "was helping move a screen, looked down and right wrist was swollen." On January 6, Dr. Wilson's work status report stated that Pouncil was "unable to return to work" and she was to wear a splint, not lift over 10 lbs., and was allowed no tight pinching or gripping with her right hand. Dr. Wilson stated that Pouncil's injury was "traumatic De Guervain's disease," a type of tendinitis. Pouncil was returned to full work duty on January 20, 1994, however, the record does not indicate if she ever returned to her job at Avery Dennison. Pouncil received workers compensation benefits as a result of the injuries at Avery Dennison. On her application for employment with Grede, Pouncil stated that she only worked for Avery Dennison from November 1993 until January 1994. Pouncil stayed home with her two children from January 1994 until July 1995, when she took the job with Grede.

The KDHR referee asked Pouncil about her failure to disclose her previous workers compensation claims. Pouncil responded, "I wasn't thinking." During cross-examination, Pouncil was asked, "You admit that your testimony at the preliminary hearing is just directly in conflict with, with what really happened, don't you?" Pouncil responded,

"Like I said I didn't think about that, I mean, yes I did hurt my hand but, and I did see a doctor for it. But it's not as much as you guys are making it out to be. That's the way I feel. I did not hurt my wrist, the rack fell on my hand. And my hand, my whole hand up to my wrist swoll [*sic*]."

The referee found that Pouncil had been dishonest on her employment questionnaires. The referee stated it was "highly improbable that the claimant simply 'forgot' that she had received workers' compensation benefits from such a serious injury." The referee concluded the dishonesty constituted misconduct, declared Pouncil ineligible for unemployment benefits, and reversed the examiner's decision. A nunc pro tunc order was entered on July 22, 1996, requiring Pouncil to repay any unemployment benefits she may have received.

Pouncil filed a timely notice of appeal to the Employment Security Board of Review (Board). During Pouncil's testimony before the Board on July 8, 1996, she testified that she filed for "worker's comp" at the time she lost the tip of her finger but was unaware that she had received worker's compensation benefits for the loss of the tip of her finger. The Board adopted the referee's decision. Pouncil filed a timely petition for judicial review to the district court. The parties stipulated to the evidentiary record developed in the administrative hearings. The district court considered the case on the record from the Board. The district court found that Pouncil received "conservative" medical care for an injury to her right wrist which occurred in late 1993 or early 1994; that Pouncil received no permanent work restrictions from the injury; that the injury was not serious or significant and did not require an affirmative answer to the question in the medical history questionnaire; and that *she* did not file a workers compensation claim for this injury. The district court also found that Pouncil failed to state that she had received workers compensation benefits when the tip of her left index finger was amputated.

The district court concluded that the Board "erroneously applied and erroneously interpreted the law in its finding that Petitioner Tamatha Pouncil engaged in misconduct connected with her work for the Respondent." The district court also concluded that Pouncil did not engage in misconduct when she failed to disclose her pre-

vious workers compensation claims because her previous claims and benefits were immaterial and insignificant to her work at Grede. The district court stated it was unreasonable to expect Pouncil "to report to [Grede] every temporary injury or condition that she has had, including contusions and temporary tendinitis conditions that did not result in any workers compensation claims filed by *her*." (Emphasis added.) The district court failed to address the fact that Pouncil had received workers compensation benefits. The district court reversed the orders of the referee and the Board. The Board and Grede both filed timely notices of appeal.

The Board claims Grede was owed a duty of honesty in completing employment documents. It claims this duty exists in part so Grede can place its employees in positions that will not aggravate preexisting injuries. The Board claims Pouncil breached this duty, which amounts to misconduct under K.S.A. 1995 [now 1997] Supp. 44-706(b)(1). The Board requests that the judgment of the district court be reversed and the Board's decision reinstated.

Pouncil claims the district court's decision should be affirmed because there is no evidence in the record that her wrist injury at Grede was related to two previous workers compensation claims. As a result, she claims she did not breach a duty to Grede and, therefore, is not guilty of misconduct. Furthermore, Pouncil claims the referee and the Board exceeded their authority when they considered evidence from the workers compensation hearing in this case.

This is a case that involves judicial review of an agency's action and the scope of review by this court is set out in K.S.A. 77-621. The case turns on the interpretation of the word "misconduct," which appears in K.S.A. 1997 Supp. 44-706(b)(1).

"The fundamental rule for statutory construction to which all other rules are subordinate is that the intent of the legislature governs when that intent can be ascertained. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984). We give great weight and judicial deference under the doctrine of operative construction to the interpretation of a statute by the administrative body charged with enforcing the statute. When we review an agency's interpretation of a question of law, our review is not limited by K.S.A. 77-621. In reviewing a question of law, we may substitute our judgment for that of the agency. *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA,*

233 Kan. 801, 667 P.2d 306 (1983)." *National Gypsum Co. v. Kansas Employment Security Bd. of Review*, 244 Kan. 678, 682, 772 P.2d 786 (1989).

Even though this court's review of a question of law is unlimited,

"interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to great judicial deference. [Citation omitted.] The agency's interpretation of a challenged statute may, in fact, be entitled to controlling significance in judicial proceedings. Further, if there is a rational basis for the agency's interpretation, it should be upheld on judicial review." *Kansas Univ. Police Officers Ass'n v. Public Employee Relations Bd.*, 16 Kan. App. 2d 438, 440, 828 P.2d 369 (1991).

The basic issue in this case is whether Pouncil's untruthful answers on Grede's employment questionnaires were misconduct under K.S.A. 1997 Supp. 44-706. Misconduct is a term of art defined by the following relevant portions of K.S.A. 1997 Supp. 44-706(b)(1):

"An individual shall be disqualified for benefits:

. . . .

"(b) If the individual has been discharged for misconduct connected with the individual's work. . . .

(1) For the purposes of this subsection (b), 'misconduct' is defined as a violation of a duty or obligation reasonably owed the employer as a condition of employment."

In determining whether an employee has committed misconduct, the relevant inquiry is whether the employee violated K.S.A. 1997 Supp. 44-706, not whether he or she violated a work rule of the employer. See *City of Arkansas City v. Kansas Dept. of Human Resources*, 21 Kan. App. 2d 296, 299, 898 P.2d 665 (1995).

The record contains substantial evidence that Pouncil told Grede she had never received workers compensation benefits when in fact she had. She also told Grede she had never sustained a serious injury that did not require hospitalization when in fact she had injured her right wrist and hand in late 1993 and again in early 1994. The question is whether such misstatements violate "a duty or obligation reasonably owed the employer as a condition of employment." K.S.A. 1997 Supp. 44-706(b)(1).

Kansas courts have not addressed whether failure to disclose past medical information on employment documents is misconduct. Similar issues have been addressed in other jurisdictions.

In *Aaron's Automotive v. Div. of Emp. Sec.*, 926 S.W.2d 229 (Mo. App. 1996), the Missouri Court of Appeals addressed whether a claimant could receive unemployment compensation benefits after giving false information regarding prior back injuries on a physical examination questionnaire completed after an offer of employment. 926 S.W.2d at 229-30. The court ruled that "[m]aterially false representations by an employee on a preemployment [sic] application report constitutes misconduct connected with the employee's work." 926 S.W.2d at 231. The court held the claimant should be disqualified for unemployment benefits under the Missouri unemployment compensation law due to the misconduct. 926 S.W.2d at 232; see *Massey v. Labor & Indus. Relations Com'n*, 740 S.W.2d 680, 682-83 (Mo. App. 1987).

In *Sill-Hopkins v. Unemp. Comp. Bd. of Rev*, 563 A.2d 1288, 1289 (Pa. Commw. 1989), the Commonwealth Court of Pennsylvania addressed whether a claimant was eligible for unemployment benefits after she had been discharged for failing to disclose on her job application prior disciplinary measures taken against her by various financial securities organizations. The court ruled that

"[u]nemployment compensation benefits are properly denied when a claimant's discharge stems from a false or incomplete statement on an employment-related application document if the misrepresentation is knowing and material to the employee's qualifications for the job at issue, regardless of whether the misrepresentation pertains to a specific job prerequisite." 563 A.2d at 1290.

The court also ruled that whether a misrepresentation is material depends on the factual circumstances of each case. 563 A.2d at 1290. The court held the claimant's misrepresentations were material to her employment and upheld the denial of benefits. 563 A.2d at 1291.

Kansas appellate courts have interpreted previous versions of K.S.A. 1997 Supp. 44-706(b)(1) on numerous occasions. They have not, however, addressed whether a lie or misrepresentation on a post-employment medical history questionnaire amounts to misconduct under the statute.

In *City of Arkansas City v. Kansas Dept. of Human Resources,* 21 Kan. App. 2d 296, 898 P.2d 665 (1995), this court addressed whether an employee's refusal to submit to a random drug test amounted to misconduct under K.S.A. 44-706(b)(1). The Court of Appeals held that the employee did not commit misconduct because the drug test was not "random" as defined by 49 C.F.R. § 391.85 (1994), which stated "random selection process means that drug tests are unannounced and that every commercial motor vehicle driver of a motor carrier has an equal chance of being selected for testing." 21 Kan. App. 2d at 300.

In *National Gypsum Co. v. Kansas Employment Security Bd. of Review,* 244 Kan. 678, 772 P.2d 786 (1989), an earlier case also dealing with drug testing, the employee had used drugs while off duty. The Kansas Supreme Court held that under K.S.A. 1988 Supp. 44-706(b)(1), off-duty drug use cannot be construed as a "willful or intentional failure to perform duties in a satisfactory manner." 244 Kan. at 687. To exclude a discharged employee from unemployment benefits for off-the-job misconduct, the off-duty misconduct must be work connected and reasonably related to the employer's business.

In *Helmick v. Kansas Employment Security Bd. of Review,* 17 Kan. App. 2d 444, 839 P.2d 49 (1992), the Court of Appeals addressed whether insubordination amounts to misconduct under K.S.A. 1990 Supp. 44-706(b)(1). In *Helmick,* the employee was a school custodian who failed to perform a specific work assignment and failed to report to her supervisor's office when ordered to discuss the matter. 17 Kan. App. 2d at 447-48. The KDHR referee found the employee was fired for misconduct and denied benefits. 17 Kan. App. 2d at 445-46. The Employment Security Board of Review and the district court affirmed. On appeal, the Court of Appeals held the employee was terminated for misconduct and upheld the denial of benefits. The court stated: "An employee's intentional flouting of the authority of those placed in charge of an employer business or governmental entity necessarily injures the interests of the employer by undermining the position of those responsible for the exercise of the authority delegated." 17 Kan. App. 2d at 448.

In *City of Wichita v. Employment Security Bd.*, 13 Kan. App. 2d 729, 733, 779 P.2d 41 (1989), this court upheld a district court decision granting unemployment benefits to a terminated employee. The employee in *City of Wichita* was a sewer maintenance worker with a history of absenteeism who was fired when he drank one sip of beer at work, which violated a work rule. 13 Kan. App. 2d at 729-30. The Court of Appeals ruled that the proper focus when examining whether an employee has been fired for misconduct is whether the statutory definition of misconduct has been met, not whether a work rule has been violated. 13 Kan. App. 2d at 732. The court then held that drinking one sip of beer is not misconduct under K.S.A. 1988 Supp. 44-706(b)(1) because the employee's act "was not substantially adverse to the City's interests and did not amount to negligence of such a degree as to show wrongful intent or evil design." 13 Kan. App. 2d at 733.

K.S.A. 1988 Supp. 44-706(b)(1) was in effect at the time that the dismissal took place in *City of Wichita*, and stated in part:

"For the purposes of this subsection (b), 'misconduct' is defined as a violation of a duty or obligation reasonably owed the employer as a condition of employment. *In order to sustain a finding that such a duty or obligation has been violated, the facts must show: (A) Willful and intentional action which is substantially adverse to the employer's interests, or (B) carelessness or negligence of such degree or recurrence as to show wrongful intent or evil design.*" (Emphasis added.)

The second sentence of the quoted portion of K.S.A. 1988 Supp. 44-706(b)(1) had been eliminated in the 1995 version that was in effect when Pouncil was terminated from her job. See K.S.A. 1995 Supp. 44-706(b). In *City of Wichita*, the court reached its holding based in part upon language which does not appear in K.S.A. 1995 Supp. 44-706(b). The version of the statute in effect when Pouncil was terminated which now appears in K.S.A. 1997 Supp. 44-706[b][1] required "a violation of a duty or obligation reasonably owed the employer as a condition of employment."

Is it reasonable to expect Pouncil to disclose her prior hand and wrist injuries when the job for which she applied required constant use of her hands and wrists?

It is clear that Pouncil failed to disclose prior workers compensation injuries and failed to disclose that she had received workers

compensation benefits on two previous occasions. The key in this case is the duty or obligation that is reasonably owed Grede by Pouncil. The question then is whether Pouncil violated a duty or obligation reasonably owed Grede as a condition of employment. Stated another way, is honesty in completing employment questionnaires about prior workers compensation injuries and receipt of workers compensation benefits a duty owed to an employer as a condition of employment?

Pouncil failed to reveal injuries to her right wrist and hand. Grede's Human Resources Manager, Terry Duckworth, testified that Pouncil's janitorial duties at the foundry included various cleaning tasks such as mopping and emptying trash. These duties involve the use of one's wrists and hands. By not disclosing the prior injury, Pouncil put herself in a position where she would be subjected to reinjuring that same hand and wrist. That is exactly what happened. The referee noted that "the employer has the right to know of an employee's medical condition so that the employer can place the employee in a position which will not aggravate the employee's pre-existing condition or injury. The employee is protected from further injury."

There is substantial evidence in the record, therefore, to support the factual findings of the referee, adopted by the Board, that Pouncil was discharged because she lied about past work injuries and associated compensation which were material to her work at Grede. We conclude that the employee's failure to disclose a prior, material work-related injury on employment forms is misconduct under K.S.A. 1997 Supp. 44-706(b)(1). See *Aaron's Automotive,* 926 S.W.2d at 231.

Pouncil owed a duty of honesty to her employer in completing employment questionnaires. Pouncil's failure to disclose her prior injuries and the receipt of compensation benefits violated a duty owed to Grede that affected the conditions of her employment. The HMR clearly stated that false information would be grounds for discharge. The district court should have given deference to KDHR's interpretation of the statute that Pouncil "breached her duty to the employer when she deliberately withheld her past med-

ical information from the employer and falsified her employment records." The contrary rulings of the district court were in error.

The relevance of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* (1994), to these proceedings was addressed by the referee and the district court. The referee asked Grede's Human Resources Director, Duckworth, if his use of Pouncil's medical records from Broadway Occupational Medicine Clinic was in conformity with the requirements of the ADA. The district court concluded the ADA issue could be avoided because Pouncil did not commit misconduct. In her appellate brief, Pouncil makes a two-sentence argument that Grede's two employment questionnaires violate 42 U.S.C. § 12112(d)(3) (1994) of the ADA.

To establish a prima facie case of discrimination under the ADA, the plaintiff must prove: " '(1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability.' " (Citations omitted.) *Rascon v. U.S. West Communications, Inc.*, 143 F.3d 1324, 1332 (10th Cir. 1998) (quoting *White v. York Int'l Corp.*, 45 F.3d 357, 360-61 [10th Cir. 1995]).

Pouncil's argument seems to be that 42 U.S.C. § 12112(d)(3) prohibits use of the medical history questionnaires in this case regardless of her disability status or Grede's status as a "covered entity." This is clearly not the case. Pouncil's ADA argument fails because she does not present a prima facie case under the ADA. There is no evidence in the record, and no appellate argument, that Pouncil is disabled. Moreover, it was impossible for Grede to assess whether it needed to make efforts to reasonably accommodate Pouncil due to her lack of candor on the two medical history forms. Pouncil's argument concerning the applicability of the ADA is without merit.

Pouncil challenged the referee's use of the evidence from the preliminary workers compensation hearing by the Board in assessing whether Pouncil was discharged for misconduct. We hold that the district court erred when it concluded as a matter of law that the referee could not consider this information.

The decision of the district court is reversed, and the decision of the Board is reinstated.

ROYSE, J., dissenting: The referee in this case determined that Tamatha Pouncil lied to Grede Foundries, Inc., when she indicated that she had never sustained any "serious injury or illness where hospitalization was not required." The referee further determined that Pouncil lied when she said she had never filed a compensation claim or received benefits as a result of an industrial injury or disease. The majority concludes that Pouncil failed to disclose a prior, material work injury and thus violated her duty to Grede. I respectfully disagree.

The prior injury in this case involves two "accidents" which occurred in December 1993 and January 1994. The medical records show that on December 17, 1993, Pouncil reported she caught her right hand between two metal racks. She was seen that day by Dr. R. L. Wilson at the Broadway Occupational Medical Clinic, where the diagnosis was "contusion rt. hand." She was instructed to use a splint and placed on light duty. On December 21, the doctor described her condition as "minor tendonitis." By December 27, Dr. Wilson described Pouncil's hand as "recovered." He ordered her return to regular work on January 4, 1994.

Pouncil returned to Dr. Wilson on January 6, 1994. On that date she reported that, as she was moving a screen, she looked down and noticed her right wrist was swollen. She was again instructed to use a splint and received a prescription for Ibuprofen. Dr. Wilson diagnosed tendonitis and placed Pouncil on light duty for 2 weeks. She returned to her regular work on January 20, 1994. The record contains no documentation that Pouncil missed a single day of work because of these right wrist problems.

The record contains no indication that Pouncil suffered any lasting effects from these "accidents." In fact, Dr. Wilson indicated that she had sustained no permanent impairment to her right wrist. He did not impose any permanent restrictions upon her use of her right hand. He advised that she did not require any further medical treatment.

I cannot concur with the majority's determination that these two transitory episodes involving a bruise and inflammation amount to

material injuries which Pouncil had a duty to disclose. The test of materiality, the majority seems to say, is whether the employer requires knowledge of the injury in order to assure that the employee is not put at risk of aggravating a preexisting condition or injury. Under that test, these injuries were not serious. Pouncil sustained no preexisting condition or injury which could be aggravated; she had recovered. While the referee and the majority appear to assume that there is a connection between Pouncil's right wrist problems in 1993-94 and her subsequent claim for bilateral carpal tunnel syndrome, the record contains no evidence to support that assumption.

In addition, before we conclude that an employee is ineligible to receive unemployment benefits because she "lied" on an employer's medical questionnaire, it seems only fair to require that the questionnaire be reasonably free from ambiguity. That is not the case here. Grede asked about "serious injury or illness" but made no effort to define that term. The other questions on the form certainly provide no contextual basis for defining that term; Grede's questions cover everything from stroke, cancer, and tuberculosis to whether the employee has ever had problems of the lungs or a skin condition or wears contact lenses. In addition, women are asked when they had their last menstrual period. Questions truly designed to ferret out information that is material to an employer in its hiring and assignment of employees can surely be drawn with more clarity and precision.

If one gives "serious" injury its ordinary meaning, then Pouncil did not lie when she failed to disclose her wrist problems. Webster's Third New International Dictionary (1986) defines "serious" in the context of "injury" as "such as to cause considerable distress, anxiety, or inconvenience: attended with danger." Reasonable people could certainly agree that Pouncil's prior wrist problems were not "attended with danger." Other common synonyms for "serious" are "grave," "critical," "severe," and "profound." Those terms seem equally inappropriate when applied to Pouncil's bruised and inflamed wrist.

The referee and the majority indicate that Pouncil failed to disclose she received workers compensation benefits on two occa-

sions. While Pouncil did report that she had sustained a partial amputation of a finger, it is true that she failed to indicate on the Grede questionnaire that she had received compensation benefits in connection with that injury. What is not clear, however, is how her receipt of benefits would be material to the employer. To borrow a phrase, once Grede knew about the partial amputation, what independent significance does the fact that Pouncil received compensation for that injury have for Grede? The majority treats the receipt of benefits as material without ever applying its own definition; we are never told why this benefits information was required to enable Grede to assure that Pouncil was not put at risk of aggravating her partially amputated finger.

The majority's determination that Pouncil failed to disclose compensation benefits received in connection with her prior wrist problems is also problematical. The record contains no notice of injury (see K.S.A. 44-520), no claim for compensation (see K.S.A. 44-520a), no application for hearing (see K.S.A. 1997 Supp. 44-534), no award (see K.S.A. 1997 Supp. 44-525), and no settlement agreement (see K.S.A. 44-526). In fact, the record shows that Pouncil's employer did not file an Employer's Report of Accident in connection with the December 17, 1993, incident until August 9, 1995. That report does not indicate that Pouncil ever received any compensation payments. While Pouncil did at one point in her testimony seem to say she had received compensation benefits, the only corroboration of that statement in the record is the fact that she was treated by Dr. Wilson.

K.S.A. 44-702 sets forth the legislature's intent to protect Kansans from the burdens of involuntary unemployment. It is a remedial statute which should be liberally construed. See *City of Lakin v. Kansas Employment Security Bd. of Review*, 19 Kan. App. 2d 188, 190, 865 P.2d 223 (1993). In light of the legislative intent, this court should be cautious about imposing an additional duty on those who seek unemployment benefits. The record in this case is simply too flimsy to provide a basis for crafting and applying such a rule.