(3 P.3d 548)

No. 82,151

JOHNNY R. CARNES, *Appellant,*
v. ROBERT D. HANNIGAN, *et al., Appellee.*

Opinion filed December 3, 1999.

*Michael C. Robinson,* of Reynolds, Forker, Berkley, Suter & Rose, of Hutchinson, for the appellant.

*Jon D. Graves,* special assistant attorney general, of Kansas Department of Corrections, for the appellee.

Before BRAZIL, P.J., LEWIS, J., and MARLA J. LUCKERT, District Judge, assigned.

LUCKERT, J.: Johnny R. Carnes appeals the summary denial of his petition filed pursuant to K.S.A. 1998 Supp. 60-1501. Carnes disputes the Department of Correction's (DOC) calculation of his maximum release date, arguing the date should be February 7, 1997, rather than February 3, 2000, as calculated by the DOC. After hearing evidence, the trial judge denied Carnes' petition and concluded that the February 3, 2000, release date was correct. We affirm.

In 1982, Carnes was sentenced to concurrent terms for four cases, resulting in a controlling sentence of 5 to 15 years. In 1988, Carnes was released on parole. While on parole, he committed a new crime for which he was sentenced to the custody of DOC to serve a 1-to 2-year term with the sentence to run consecutive to his earlier sentence. Thus, his aggregated sentence was a minimum term of 6 years and a maximum term of 17 years. On May 25, 1994, Carnes was again released from custody; he was placed on conditional release. He was returned to the custody of DOC on July 28, 1994, as a conditional release violator with no new criminal sentence.

Upon his return to custody as a conditional release violator, DOC calculated his maximum release date as February 3, 2000. DOC determined this date by first determining the sentence begins minimum date. This was calculated by (1) starting with the sentencing date from his 1988 case; (2) subtracting jail credit (4 months and 1 day); and (3) subtracting penal credit (3 years, which is one-half of his minimum sentence). The result was a sentence begins minimum date of May 25, 1985. To this was added his controlling aggregated sentence, which was a 6-year minimum and a 17-year maximum. The resulting sentence end minimum date was May 25, 1991, and the sentence end maximum date was May 25, 2002. DOC then credited the maximum controlling sentence with the 2 years, 3 months, and 22 days of time Carnes had served beyond his parole eligibility date on the 1982 cases. This resulted in a controlling maximum release date of February 3, 2000.

Carnes does not dispute any aspect of credit granted to him for time served or the manner in which it was credited. Carnes' disagreement is with the application of the 17-year aggregated maxi-

mum term. He argues K.A.R. 44-6-141(e) should be interpreted so that the consecutive sentence of 1 to 2 years be run concurrent with the 15-year sentence. Under this interpretation, Carnes should have been released from custody on February 7, 1997.

K.A.R. 44-6-141(e) provides:

"Violator returned past conditional release without new sentence. When a conditional release violator is returned without new sentences and the conditional release date has been reached on all other sentences, the maximum term of each active sentence shall be added to each of the sentence begins dates. The sentence requiring the longest period of incarceration to reach the maximum date shall be identified as the controlling maximum date and its length of sentence shall be the controlling maximum term."

Carnes argues the 15-year sentence is the longest period of incarceration and, thus, establishes the controlling maximum date.

DOC argues that K.A.R. 44-6-141(e) cannot be read in isolation but must be construed consistently with K.S.A. 21-4608(f)(4) and other portions of K.A.R. 44-6-141. DOC interpreted the provisions, when taken as a whole, to require that the sentences be aggregated and that the aggregated 17-year sentence be applied as the longest period of incarceration.

Resolving the issue of the appropriate maximum release date requires this court to review the trial court's conclusions of law and interpret K.S.A. 21-4608(f)(4) and K.A.R. 44-6-141(e). These determinations involve questions of law over which this court has unlimited review. *Gilmore v. McKune*, 23 Kan. App. 2d 1029, 1032, 940 P.2d 78 (1997). In construing the relevant statutes, this court must apply the fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998). To determine the meaning of statutes and regulations, all provisions, *in pari materia*, must be construed together. *State v. Bolin*, 266 Kan. 18, 24, 968 P.2d 1104 (1998).

When interpreting regulations, the courts give great weight and judicial deference to the interpretation made by the administrative body charged with enforcing the regulations. See *Pouncil v. Kansas Employment Security Bd. of Review*, 25 Kan. App. 2d 740, 744, 970 P.2d 547 (1998). Under the doctrine of operative construction, " '[t]he agency's interpretation of a challenged statute may, in fact, be entitled to controlling significance in judicial proceedings. Further, if there is a rational basis for the agency's interpretation, it should be upheld on judicial review.' " 25 Kan. App. 2d at 745 (quoting *Kansas Univ. Police Officers Ass'n v. Public Employee Relations Bd.*, 16 Kan. App. 2d 438, 440, 828 P.2d 369 [1991]).

There is a rational basis for DOC's interpretation and application of its regulation because that interpretation is consistent with K.S.A. 21-4608, which states in relevant part:

"(c) Any person who is convicted and sentenced for a crime committed while on probation, assignment to a community correctional services program, on parole, on conditional release or on postrelease supervision for a felony shall serve the sentence consecutively to the term or terms under which the person was on probation, assigned to a community correctional services program or on parole or conditional release.

. . . .

"(f) . . .

(4) When indeterminate sentences are imposed to be served consecutively to sentences previously imposed . . . the aggregated minimums and maximums shall be computed from the effective date of the subsequent sentences which have been imposed as consecutive. For the purpose of determining the sentence begins date and the parole eligibility and conditional release dates, the inmate shall be given credit on the aggregate sentence for time spent imprisoned on the previous sentences, but not exceeding an amount equal to the previous minimum sentence less the maximum amount of good time credit that could have been earned on the minimum sentence. For the purpose of computing the maximum date, the inmate shall be given credit for all time spent imprisoned on the previous sentence."

Through K.S.A. 21-4608(c), the legislature mandated consecutive sentences as a harsher penalty for crimes committed by a defendant while on probation, parole, post-release supervision, or conditional release. *Blomeyer v. State*, 22 Kan. App. 2d 382, 385, 915 P.2d 790, *rev. denied*, 260 Kan. 991 (1996). Under K.S.A. 21-4608(f)(4), the sentences must be aggregated for certain purposes.

While the holding in *Blomeyer* limited use of the aggregated sentence to those applications specifically detailed in the statute, the calculation of a maximum date is one of the purposes specifically mentioned.

Consequently, when DOC applied the provisions of K.A.R. 44-6-141(e) requiring that "the maximum term of each active sentence . . . be added to each of the sentence begins dates," there was only one sentence begins date and only the aggregated 17-year sentence to be added. DOC was required to treat the aggregated sentence as "[t]he sentence requiring the longest period of incarceration to reach the maximum date." K.A.R. 44-6-141(e).

The trial court did not err by dismissing Carnes' 60-1501 petition. Carnes' reading of K.A.R. 44-6-141(e) is incorrect. DOC correctly calculated Carnes' sentence. Consequently, he is not entitled to relief.

Affirmed.