IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 21, 2014 Session

**KIMBERLY A. SPARKMAN**

v.

**BURNS PHILLIPS, COMMISSIONER, TENNESSEE DEPARTMENT OF LABOR
AND WORKFORCE DEVELOPMENT, AND FIRST TENNESSEE BANK, N.A.**

**An Appeal from the Chancery Court for Maury County**
**No. 10-228       Stella L. Hargrove, Chancellor**

**No. M2013-01235-COA-R3-CV - Filed July 7, 2014**

This appeal involves the denial of unemployment compensation benefits. The petitioner was employed by the defendant bank. When the petitioner employee arrived for work, the employee's supervisor smelled alcohol on her and asked her to take an alcohol test. The employee refused to take the alcohol test, and as a result her employment was terminated. The employee filed for unemployment benefits. The defendant commissioner held that the employee was discharged for work-related misconduct and was disqualified from receiving unemployment benefits, and the denial of benefits was affirmed in the administrative appeals process. The employee then filed the instant lawsuit for judicial review of the administrative decision. The trial court affirmed the agency's decision, and the petitioner now appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Kathryn Evans Moss, Nashville, Tennessee, and David Kozlowski, Columbia, Tennessee, for the Plaintiff/Appellant, Kimberly A. Sparkman

Robert E. Cooper, Attorney General & Reporter, and Derek C. Jumper, Assistant Attorney General, Nashville, Tennessee, for the Defendant/Appellee, Burns Phillips, Commissioner, Tennessee Department of Labor and Workforce Development

Russell W. Jackson, Memphis, Tennessee, for the Defendant/Appellee, First Tennessee Bank (no brief filed)[1]

**OPINION**

**FACTS AND PROCEEDINGS BELOW**

In April 1998, Plaintiff/Appellant Kimberly Sparkman began working for Defendant/Appellee First Tennessee Bank, N.A. ("the Bank"). She worked as a financial services representative, so her work station was in the lobby of the Bank. Her job duties required personal face-to-face interaction with customers as they came in the door. Ms. Sparkman worked for the Bank in this capacity for about 11 years.

One day in June 2008, Ms. Sparkman came to work late. When she arrived, she was limping. Her supervisor at the time, Lane Hargrove, smelled alcohol on Ms. Sparkman right away. Mr. Hargrove called a Bank human resources specialist, Paula Hulette, to report his observations. The next day, Mr. Hargrove met with Ms. Sparkman, and together they had a teleconference with Ms. Hulette. Ms. Hulette explained to Ms. Sparkman that the Bank had a policy that prohibited employees from performing their duties while under the influence of alcohol. Ms. Hulette told Ms. Sparkman that if it ever happened again, that is, if Ms. Sparkman smelled of alcohol again while at work, Ms. Hulette "would expect her to take a blood alcohol test." If she were asked to take a blood alcohol test and she refused to take the test, Ms. Sparkman was warned, the Bank would terminate her employment.

Almost a year later, on May 16, 2009, Ms. Sparkman again smelled of alcohol while she was at work at the Bank. On that day, Ms. Sparkman's supervisor, Rachel Stampley, and another Bank supervisor, Stephen Witt, smelled alcohol on Ms. Sparkman. As a result, they initiated a teleconference with Ms. Hulette. Based on the reports that Ms. Sparkman smelled of alcohol, Ms. Hulette asked Ms. Sparkman to take a blood alcohol test. Ms. Sparkman

---

[1]Appellee First Tennessee Bank did not file an appellate brief but has indicated that it adopts the position of the Commissioner in this appeal.

refused. The Bank terminated Ms. Sparkman's employment that day for refusing to take the alcohol test as requested.

On May 20, 2009, Ms. Sparkman filed a claim for unemployment benefits with the Defendant/Appellee Tennessee Department of Labor and Workforce Development ("Department"). On June 3, 2009, the Department denied her claim for benefits. The Department based its decision on the fact that, at the time of the incident, Ms. Sparkman was aware of the Bank's policies on the use of intoxicants and had received warnings in the past related to those policies. The Department concluded that Ms. Sparkman's refusal to take an alcohol test under those circumstances constituted work-related misconduct under Tennessee Code Annotated § 50-7-303(a)(2)(A), and so disqualified her from receiving benefits.[2] Ms. Sparkman filed an administrative appeal from the Department's decision.

On August 17, the Department's Appeals Tribunal conducted an evidentiary hearing in Ms. Sparkman's appeal. Ms. Sparkman was present at the hearing and was represented by counsel. Other than herself, Ms. Sparkman had no witnesses present to testify on her behalf. The Bank, represented by Ms. Hulette, submitted the testimony of four witnesses besides Ms. Hulette — employees Paula Hulette, Rachel Stampley, Stephen Witt, and Lane Hargrove.

At the outset of the administrative hearing, Ms. Hulette testified about the Bank's written policy prohibiting employees from "performing any work for [the Bank] while under the influence of alcohol or other drugs." The Bank's written policy did not address a request to take an alcohol test or a refusal to take such a test.

Rachel Stampley testified that, on the day in question, another Bank employee told her that Ms. Sparkman arrived at work smelling of alcohol. Ms. Stampley then approached Ms. Sparkman, and she too smelled alcohol on Ms. Sparkman. Ms. Sparkman explained to Ms. Stampley that alcohol odor allegedly detected on her was possibly caused by medication she was taking. Ms. Stampley called Ms. Hulette, who told Ms. Stampley that Ms. Sparkman needed to be tested for alcohol that day. Ms. Hulette directed Ms. Stampley to arrange a meeting via teleconference with Ms. Sparkman to discuss the matter.

After Ms. Stampley concluded the telephone call with Ms. Hulette, she called a different Bank branch manager, Stephen Witt. Ms. Stampley asked Mr. Witt to serve as a witness in Ms. Stampley's meeting with Ms. Sparkman. Once Mr. Witt came in proximity with Ms. Sparkman, he too smelled alcohol on her. With Ms. Sparkman present, Ms. Stampley and

---

[2]Under this subsection, a claimant is disqualified from receiving unemployment benefits "[i]f the administrator finds that a claimant has been discharged from the claimant's most recent work for misconduct connected with the claimant's work . . . ." Tenn. Code Ann. § 50-7-303(a)(2)(A) (Supp. 2013).

Mr. Witt called Ms. Hulette for the teleconference. During the teleconference, Ms. Hulette advised Ms. Sparkman that she must take an alcohol test. If she refused, Ms. Hulette told Ms. Sparkman, her Bank employment would be terminated. Ms. Sparkman refused to consent to the alcohol test, and her employment was terminated on the spot.

Mr. Hargrove testified that he was Ms. Sparkman's supervisor from August 2007 through December 2008. He described the 2008 incident in which he perceived an alcohol smell on Ms. Sparkman while she was at work. Mr. Hargrove confirmed that Ms. Sparkman was told at that time that, if she again smelled of alcohol while at work, she would be asked to take an alcohol test.

Ms. Sparkman testified at the hearing on her own behalf. She denied that she was drunk, under the influence of alcohol, or drinking on the job on the day the Bank terminated her employment, but she admitted to drinking alcohol the night before. Ms. Sparkman testified that she refused to consent to the alcohol test because she "was in shock" that she had been asked to take such a test when "there was no alcohol involved." Ms. Sparkman admitted that she was previously warned that, if she refused to take an alcohol test, her employment would be terminated.

After her employment was terminated and she was driving home, Ms. Sparkman said, a police officer stopped her. As it turned out, Ms. Stampley had called the police when Ms. Sparkman left the Bank because she suspected that Ms. Sparkman was driving under the influence of alcohol. The police officer who stopped Ms. Sparkman did not charge her with a DUI or any other offense and allowed her to drive home, Ms. Sparkman testified, because "there was no suspicion of alcohol."

On August 18, 2009, the Appeals Tribunal issued its decision. It credited Ms. Sparkman's testimony that she "was not intoxicated or drinking alcohol while at work" on the day her employment was terminated, and her assertion that she "showed no signs of drinking other than having the smell of alcohol" on her. The Appeals Tribunal made a factual finding that three financial center managers smelled alcohol on Ms. Sparkman on the day in question, and that Ms. Sparkman refused to take an alcohol test as requested. Finally, the Appeals Tribunal found that Ms. Sparkman "had been warned previously that refusing to be tested would result in discharge." Based on these findings, the Appeals Tribunal held that Ms. Sparkman was guilty of workplace misconduct under Section 50-7-303(a)(2)(A) and was therefore not eligible for unemployment benefits. It reasoned that the Bank "had a right to expect that [Ms. Sparkman] take an alcohol test, especially after warning that failure to do so would result in discharge. The claimant disregarded the employer's interests, and this is disqualifying." Thus, the Appeals Tribunal affirmed the initial agency decision denying Ms.

Sparkman unemployment benefits. Ms. Sparkman then appealed the Appeals Tribunal's decision to the Department's Board of Review ("Board").

On March 9, 2010, the Board issued its decision, affirming the decision of the Appeals Tribunal. In its decision, the Board adopted the entire decision of the Appeals Tribunal, including its findings of fact and conclusions of law.

On April 16, 2010, Ms. Sparkman filed the instant lawsuit against the Department and the Bank (collectively, "Defendants"), seeking judicial review of the Board's decision affirming the denial of her unemployment benefits.[3] In her complaint, Ms. Sparkman alleged: "The administrative record fails to contain, as a matter of law, substantial and material evidence to support the Department's legal conclusion that [Ms. Sparkman] is guilty of misconduct." In their answers, the Defendants did not dispute the underlying facts but denied that Ms. Sparkman was entitled to the relief she sought.

On February 27, 2013, the trial court heard oral argument on Ms. Sparkman's petition for judicial review. On April 3, 2013, the trial court issued a memorandum opinion. The trial court found substantial and material evidence in the record to support the Board's decision, and held that the Board had a reasonable basis in law to support its conclusion that Ms. Sparkman's refusal to take the alcohol test constituted work-related misconduct. The trial court reasoned:

> Three co-workers of the Plaintiff testified that she smelled of alcohol. The employer made a simple request that Plaintiff submit to an alcohol test. The request was reasonable. Plaintiff's refusal to comply with this simple and reasonable request is misconduct. Her refusal placed the employer in a difficult position in that the employer could not determine if the Plaintiff was indeed working under the influence of alcohol, in clear violation of [the Bank's] Alcohol Policy. Plaintiff's refusal to be tested was not in the best interest of the employer.
>
> Plaintiff made the decision to refuse the alcohol test, thereby leading to termination of her job. She refused to conform her behavior to the employer's policies and rules. She had a prior warning. Plaintiff refused to honor a simple, reasonable request. It is her own fault that she was terminated.

For these reasons, the trial court affirmed the Board's conclusion that Ms. Sparkman was discharged for work-related misconduct and thus was ineligible to receive unemployment benefits. From this order, Ms. Sparkman now appeals.

_____

[3]In the lawsuit, Ms. Sparkman was permitted to proceed as an indigent person.

## ISSUE ON APPEAL AND STANDARD OF REVIEW

The only issue Ms. Sparkman raises on appeal is whether the trial court erred in concluding that her refusal to take an alcohol test constituted work-related misconduct under Section 50-7-303(a)(2)(A).

Tennessee statutes governing unemployment compensation provide that a person who is aggrieved by an agency decision is entitled to judicial review of that decision. Tenn. Code Ann. § 50-7-304(i)(1). In an appeal from an agency decision on unemployment compensation benefits, the same standard of review applies to both the trial court and the appellate court. *Hale v. Neeley*, 335 S.W.3d 599, 601 (Tenn. Ct. App. 2010). The standard is set forth in Section 50-7-304(i)(2):

> (2) The chancellor may affirm the decision of the commissioner or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> > (A) In violation of constitutional or statutory provisions;
>
> > (B) In excess of the statutory authority of the agency;
>
> > (C) Made upon unlawful procedure;
>
> > (D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> > (E) Unsupported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 50-7-304(i)(2) (Supp. 2013).

In the course of arguing that the trial court erred in holding that her refusal to take an alcohol test constituted work-related misconduct, Ms. Sparkman challenges the sufficiency of the evidence. "Substantial and material evidence" is defined as "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Southern Rwy. Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984). "When the evidentiary basis of a decision involving an unemployment compensation claim is attacked, Tenn. Code Ann. § 50-7-304(i)(2)(D) and (E) direct the courts to review the entire record, including any proof that

fairly detracts from the agency's decision, to determine whether it is arbitrary, capricious, characterized by an abuse of discretion, or unsupported by substantial and material evidence." *Armstrong v. Neel*, 725 S.W.2d 953, 955 (Tenn. Ct. App. 1986) (footnote omitted). The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, and it may not reverse, remand, or modify the agency decision except for errors that affect the merits of the final agency decision. Tenn. Code Ann. § 50-7-304(i)(3).

Ms. Sparkman acknowledges that the pertinent facts are not disputed. Where the facts are essentially undisputed, the question of whether the employee's actions constitute "misconduct" under the statute is a question of law that we review *de novo*. *See Hallowell v. Vestco, Inc.*, No. W2004-01322-COA-R3-CV, 2005 WL 1046795, at *4 (Tenn. Ct. App. May 4, 2005).

## ANALYSIS

As stated above, Ms. Sparkman argues overall that the trial court erred in holding that her refusal to take an alcohol test constituted work-related misconduct under Section 50-7-303(a)(2)(A). As described more fully below, she contends that, by law, the Bank had to have "reasonable suspicion" to ask her to take an alcohol test, and that it did not have such reasonable suspicion. Ms. Sparkman also asserts that the Bank may not terminate her employment for "work-related misconduct" when the Bank's written policies did not state when an employee can be required to take an alcohol test or that refusal to take an alcohol test would result in termination.

As background, Tennessee Code Annotated § 50-7-303(a)(2)(A) provides: "A claimant shall be disqualified for [unemployment] benefits . . . [i]f the administrator finds that a claimant has been discharged from the claimant's most recent work for misconduct connected with the claimant's work . . . ." Tenn. Code Ann. § 50-7-303(a)(2)(A) (Supp. 2013). In general, the statutes governing unemployment compensation "should be construed liberally in the employee's favor and . . . the disqualification provisions in the statutes should be construed narrowly." *Armstrong*, 725 S.W.2d at 955 (citing *Weaver v. Wallace*, 565 S.W.2d 867, 869-70 (Tenn. 1978)).

Section 50-7-303 provides: "A discharge resulting from a refusal to take a drug test or an alcohol test authorized by chapter 9 of this title shall be deemed to be a discharge for misconduct connected with work where it is based upon substantial and material evidence of the employee's refusal." Tenn. Code Ann. § 50-7-303(a)(2)(B)(iii). The allusion to "chapter 9" in Section 50-7-303 refers to the Drug-Free Workplace Act ("the Act"), Tennessee Code Annotated § 50-9-101, *et seq.* In this case, the testimony before the Appeals

Tribunal indicates that the Bank is not certified as a Drug-Free Workplace under the Act but nevertheless chose to base its alcohol policies on the Act.

In arguing that the Bank had to have "reasonable suspicion" in order to ask her to take an alcohol test, Ms. Sparkman relies on language in the Drug-Free Workplace Act as well as Section 50-7-303 of the unemployment compensation statutes. She asserts: "Under the Drug-Free Workplace Act, an employee not in a safety-sensitive position can be tested for alcohol only when the test is based upon 'reasonable suspicion,' which is also the reason [the Bank] claims to have requested Ms. Sparkman to submit to a test." She then notes that the term "reasonable suspicion" under the Act is defined as "a belief that an employee is using or has used . . . alcohol in violation of the employer's policy drawn from specific objective and articulable facts and reasonable inference drawn from those facts in light of experience." Tenn. Code Ann. § 50-9-103(15). Construing these provisions of the Act in conjunction with the unemployment statutes and the Bank's written policy, Ms. Sparkman argues that the refusal to take an alcohol test cannot constitute "misconduct" absent a showing that the employer's request to the employee was prompted by "reasonable suspicion" that the employee was "under the influence of alcohol." In this case, she contends, the mere smell of alcohol, absent some other physical symptom or outward manifestation of being under the influence — such as slurring, stumbling, or being incoherent — does not rise to the level of reasonable suspicion that an individual is under the influence of alcohol. Ms. Sparkman insists that "merely the smell of alcohol alone is not enough to show intoxication in violation of company policy amounting to misconduct."

Ms. Sparkman raises an interesting argument, but under the facts of this case, we need not address it to resolve this appeal. The testimony before the Appeals Tribunal indicates that Ms. Sparkman's employment was not terminated because she was "under the influence" of alcohol in violation of the Bank's written policy. The testimony indicates instead that the Bank asked her to take an alcohol test based on the fact that two Bank supervisors smelled alcohol on her at work, and she refused the Bank's request that she take the alcohol test. Ms. Sparkman admitted that she had been specifically warned that, if she smelled of alcohol while at work again, she would be asked to take an alcohol test, and if she refused to take the test, her employment would be terminated. Ms. Sparkman did not deny, and does not deny in this appeal, that she smelled like alcohol on the day in question, that she was asked to take an alcohol test, and that she refused to take the test. The fact that the Bank's *written* policies did not include a provision specifying that refusal to take an alcohol test could result in termination is of no consequence where the employee admits that she was verbally informed of it.

Though Ms. Sparkman does not deny that she smelled of alcohol on the day her employment was terminated, she maintains that she did not *actually use* alcohol on that day and did not

exhibit outward behavior indicating that she was "under the influence of alcohol." Under these circumstances, she insists, the Bank did not have the required "reasonable suspicion" to ask her to take an alcohol test to begin with.

We respectfully decline to adopt this reasoning.[4] Where three Bank employees perceived that Ms. Sparkman smelled of alcohol when she arrived for work in the morning, this is a reasonable basis for the Bank to ask her to take an alcohol test. "This Court . . . is not required to check common sense at the courthouse door." *Dattel Family Ltd. P'ship v. Wintz*, 250 S.W.3d 883, 892 (Tenn. Ct. App. 2007).

Regardless, well prior to the day Ms. Sparkman's employment was terminated, she was informed that, if she came to work smelling of alcohol again, she would be asked to take an alcohol test and would be subject to termination if she refused. The Bank simply followed through on a policy of which Ms. Sparkman was aware. As held by the Department and by the trial court below, Ms. Sparkman's refusal to take the test was not in the best interest of the Bank and constituted work-related misconduct under the unemployment statutes. *See Newman v. Davis*, No. W2013-00696-COA-R3-CV, 2014 WL 507100, *9 (Tenn. Ct. App. Feb. 7, 2014) (an employee who violates a known company policy or fails to follow a reasonable employer directive is guilty of work-related misconduct).

Ms. Sparkman also challenges the sufficiency of the evidence in this case. As noted above, when a claimant attacks the evidentiary basis for the denial of a claim for unemployment compensation benefits, we must review the entire record to determine whether the decision is supported by substantial and material evidence. *Armstrong*, 725 S.W.2d at 955. We have done so. Ms. Sparkman does not dispute the determinative facts, namely, that she was

---

[4]Most of the cases cited by Ms. Sparkman are inapposite or address only the question of whether the smell of alcohol on an employee, in and of itself, is sufficient to show that the employee was *intoxicated* on the job. *See, e.g., Wyoming Dep't of Employment v. Rissler & McMurry Co.*,837 P.2d 686, 688, 690 (Wyo. 1992) (employer observed only unspecified erratic behavior and did not follow its own policy); *City of Ark. City v. Kansas Dep't of Human Resources*, 898 P.2d 665 (Kan. Ct. App. 1995) (interpretation of specific statute on random testing); *Robert v. Ross*, 55 A.D.2d 492, 495 (N.Y. App. Div. 1977) (no proof claimant's breath smelled of whiskey when fired); *Thompson v. Brown*, 163 So. 2d 868 (La. Ct. App. 1964) (employee not asked to take alcohol test). In this case, however, Ms. Sparkman's employment was not terminated because she was intoxicated; her employment was terminated because she came to work smelling of alcohol and, when asked to take an alcohol test, refused to do so. At least one case cited by Ms. Sparkman supports the conclusion that this is misconduct within the meaning of the unemployment compensation statutes. *See Federoff v. Rutledge*, 332 S.E.2d 855, 858 (W. Va. 1985) ("Accordingly, we hold that . . . reporting to work smelling of alcoholic beverages, after previously being admonished not to do so, supports a determination that an unemployment compensation claimant was discharged for ordinary misconduct and thereby subject to . . . disqualification from the receipt of benefits.").

warned that she would be asked to take an alcohol test if she came to work smelling of alcohol, that she was warned of the consequences of refusing the alcohol test, that she came to work smelling of alcohol on the day her employment was terminated, that she was asked to take an alcohol test, and that she refused to take it. Ms. Sparkman made the choice to refuse to take the alcohol test with full knowledge of the consequences. "[T]he burden of producing substantial and material evidence is not an onerous one." ***Roberts v. Traughber***, 844 S.W.2d 192, 196 (Tenn. Ct. App. 1991). We hold that it was clearly met in this case.

Accordingly, we affirm the trial court's decision to uphold the Board's denial of Ms. Sparkman's claim for unemployment benefits.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Plaintiff/Appellant Kimberly A. Sparkman, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE