No. 62,383

NATIONAL GYPSUM CO., *Appellant*, v. STATE OF KANSAS EMPLOYMENT SECURITY BOARD OF REVIEW and RANDELL PORTER, *Appellees*.

(772 P.2d 786)

Opinion filed April 14, 1989.

*Robert W. Christensen*, of Chapin & Penny, of Medicine Lodge, argued the cause and was on the brief for appellant.

*James R. McEntire*, of Kansas Department of Human Resources, argued the cause and was on the brief for appellee State of Kansas Employment Security Board of Review.

*Myrlen L. Bell*, of Hall & Bell, of Medicine Lodge, argued the cause and was on the brief for appellee Randell Porter.

The opinion of the court was delivered by

LOCKETT, J.: Employer, National Gypsum Co. (NGC), appeals

the Barber County District Court's affirmance of a decision of the Kansas Employment Security Board awarding unemployment benefits to employee, Randell Porter. The district court found that the employee's failure to pass a drug screen test did not disqualify him from receiving unemployment benefits since the failure to pass the test did not amount to "[w]illful and intentional action which is substantially adverse to the employer's interests" as required by K.S.A. 1988 Supp. 44-706(b)(1)(A) of the Kansas Employment Security Law, K.S.A. 44-701 *et seq.*

Randell Porter was employed by the appellant NGC from 1983 to 1986. NGC had a written substance abuse policy designed to maintain its workplace safe and free of drugs, alcohol, narcotics, marijuana, and other illegal or controlled substances. The policy recognized that the use of such substances outside of work could affect job performance or the safety of other employees or company property and stated that an on-the-job or on-company-premises violation may result in disciplinary action, up to and including discharge. The policy also provided that employees could be tested for drugs in the following situations: (1) an unscheduled absence from work of more than 30 days; (2) an on-the-job injury requiring medical treatment; (3) recurring or serious problems with job performance, attendance, or attitude where no other verifiable and reasonable basis for such problems exists; and (4) where there is other observable evidence of drug or alcohol abuse, or of some other undiagnosed health problem affecting job performance. A positive drug screen could require the affected employee to accept professional treatment and to submit to additional drug screens.

On January 7, 1987, Porter suffered his second on-the-job accident while at NGC and was absent from work for four months. When Porter returned to work in May 1987 and was tested, his urine test, Enzyme Multiplied Immunoassay Technique (EMIT), was positive for cannabinoids (marijuana). A separate, more specific test, Gas Chromatography/Mass Spectrometry, confirmed cannabinoids (marijuana) in Porter's urine. To continue employment, Porter was required to meet with a drug counselor and, if necessary, accept treatment. After initially refusing, Porter agreed to be evaluated. When evaluated, Porter denied use of marijuana.

After Porter returned to work on July 21, 1987, his drug screen

was negative. Porter was warned by NGC that any further accident, safety violation, or violation of the company's substance abuse policy would result in disciplinary action and/or termination. Seven days later, Porter suffered his third on-the-job injury.

During a physical examination performed two days after the accident, Porter's urine tested positive for marijuana. In August, NGC management terminated Porter because of the positive drug screen and other violations that are not an issue in this appeal. When Porter applied for unemployment benefits, his former employer objected, claiming Porter was not entitled to benefits.

At the administrative hearing, Porter stated he had been taking prescribed pain medication at the time the drug screens were performed, but introduced no evidence to corroborate his testimony. The examiner for the Kansas Department of Human Resources (KDHR) found that, although Porter could be discharged by his employer for failure to pass a drug screening test, the test did not establish drug usage "connected with work," and that, therefore, Porter was entitled to unemployment benefits. NGC appealed, claiming that the positive drug screen alone was sufficient reason for a denial of benefits.

Rejecting NGC's claim, the referee for KDHR cited 44-706 and determined that a positive test for drug usage alone was not sufficient to prove a willful or intentional failure to perform duties in a satisfactory manner and to deny benefits. The referee's decision was subsequently affirmed by the Kansas Employment Security Board by a 2-1 vote.

The employer appealed the award of unemployment benefits to the District Court of Barber County, which affirmed. In his memorandum opinion, the district judge found there was no evidence that Porter was under the influence of marijuana while at work. Citing *Glide Lumber Prod. Co. v. Emp. Div. (Smith)*, 86 Or. App. 669, 741 P.2d 907 (1987), the district court held that, in the absence of any evidence that an employee's drug usage had actual on-the-job impact, an employee's dismissal for failing a urine drug test based on off-the-job drug usage could not serve as the basis for a denial of unemployment compensation benefits. The employer appeals.

The legislature, when enacting the Kansas Employment Security Law, K.S.A 44-701 *et seq.*, stated that economic insecurity,

due to unemployment, is a serious menace to health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. Under the police powers of the state, the legislature, for the public good and the general welfare of the citizens of this state, enacted the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own. K.S.A. 44-702.

The right of the unemployed worker to receive benefits from the fund is not absolute. K.S.A. 1988 Supp. 44-706 details certain conditions under which employees may be disqualified from receiving benefits. One purpose of this type of provision is to deny the benefits to those who bring about their own unemployment by acts which justify the employer in discharging the employee. Another purpose of the statute is to prevent the dissipation of unemployment reserve funds by disqualifying acts rather than by a lack of suitable job opportunities. The provision pertinent to this appeal is K.S.A. 1988 Supp. 44-706(b)(1), which provides:

"An individual shall be disqualified for benefits:

. . . .

"(b) If the individual has been discharged for misconduct connected with the individual's work. . . .

"(1) For the purposes of this subsection (b), 'misconduct' is defined as a violation of a duty or obligation reasonably owed the employer as a condition of employment. In order to sustain a finding that such a duty or obligation has been violated, the facts must show: (A) Willful and intentional action which is substantially adverse to the employer's interests, or (B) carelessness or negligence of such degree or recurrence as to show wrongful intent or evil design. The term 'gross misconduct' as used in this subsection (b) shall be construed to mean conduct evincing extreme, willful or wanton misconduct as defined by this subsection (b)."

It is NGC's position that, under K.S.A. 1988 Supp. 44-706(b), a positive drug screen proves a willful act of misconduct which violates NGC's substance abuse policy and is substantially adverse to its interests. Appellees, Porter and the Kansas Employment Security Board, argue that a positive drug screen, absent other evidence demonstrating that Porter's alleged drug usage

affected his actual job performance, does not disqualify Porter from receiving unemployment benefits.

Any action of the Board is subject to review in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* K.S.A. 1988 Supp. 44-709(i). Our scope of review under the Act relevant to the issue is limited to whether the agency erroneously interpreted or applied the law. K.S.A. 77-621.

The fundamental rule for statutory construction to which all other rules are subordinate is that the intent of the legislature governs when that intent can be ascertained. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984). We give great weight and judicial deference under the doctrine of operative construction to the interpretation of a statute by the administrative body charged with enforcing the statute. When we review an agency's interpretation of a question of law, our review is not limited by K.S.A. 77-621. In reviewing a question of law, we may substitute our judgment for that of the agency. *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, 667 P.2d 306 (1983).

Jurisdictions with similar statutes on disqualification for unemployment benefits have reached different conclusions. The district court relied on an Oregon case, *Glide Lumber Prod. Co. v. Emp. Div. (Smith)*, 86 Or. App. 669. The Oregon statute, Or. Rev. Stat. § 657.176(2)(a) (1987), denies benefits to one discharged for misconduct, which is defined as a willful violation of the standards of behavior an employer has the right to expect. Or. Admin. R. § 471-30-038(3) (198__). The employer in *Glide Lumber*, in order to promote safety in the workplace, prohibited the use of intoxicants or controlled substances while on company property or during work hours, reporting for work under the influence of alcohol, and reporting to work after having ingested any controlled substance. To enforce the safety policy, the employer required its employees to submit to random drug and alcohol tests.

After he tested positive for marijuana during a random urine test, the employee in *Glide Lumber* was terminated. When the ex-employee applied for unemployment benefits, his former employer objected. The court noted that the urine test used detects traces of marijuana in a person's system for approxi-

mately 30 days after use and that the test could determine neither if the employee was under the influence of marijuana nor when the employee had used marijuana. It observed that, although the employee admitted using marijuana during the two to three weeks prior to the test, there was no evidence that he was intoxicated or impaired by the prior marijuana use while at work. The court then concluded that an off-the-job activity which has no impact on the employee's work is almost, by definition, not work-connected. Direct observation by supervisors and co-workers of employee conduct in the workplace is a better means of identifying impaired workers.

A similar result was reached in *Blake v. Hercules Inc.*, 4 Va. App. 270, 356 S.E.2d 453 (1987), where the Virginia Court of Appeals reversed the lower court's denial of unemployment benefits to an employee who had tested positive for drugs. The employer, a munitions factory, had enacted a substance abuse policy which prohibited use or possession of alcohol or drugs on company premises and further prohibited employees from being under the influence of alcohol or drugs while at work. After undergoing a drug screen, the employee, Blake, tested positive for marijuana. Blake denied using the drug, but admitted being in the presence of others who used it outside of work hours. In reversing the district court, the Virginia Court of Appeals stated that there was no evidence that (1) the amount of cannabinoid found in Blake's system would affect his duties at work and (2) the employee knew that he had marijuana in his system when he reported to work. See *Marine Drilling Co. v. Whitfield*, 535 So. 2d 1253 (La. App. 1988); *City of Portland v. Emp. Div. (Clary)*, 94 Or. App. 279, 765 P.2d 222 (1988).

A contrary result was reached in *Overstreet v. Dept. of Employment Security*, 168 Ill. App. 3d 24, 522 N.E.2d 185 (1988), where the Illinois Court of Appeals reversed a decision of the State Department of Employment Security awarding unemployment compensation to the employee bus driver who had been suspended after testing positive for cocaine. After deciding to adjudicate the suspension as a discharge, the court accepted the employer's contention that the employee had been discharged for misconduct for reporting to work under the influence of a controlled substance in violation of company policy, and held that the employee's use of cocaine prior to reporting for work

constituted a deliberate violation of the employer's policy. See *Eugene v. Adm'r Div. of Emp. Sec.*, 525 So. 2d 1185 (La. App. 1988).

In *Jackson v. Board of Review*, 105 Ill. 2d 501, 475 N.E.2d 879 (1985), the Supreme Court of Illinois found the rule must be a reasonable rule governing the conduct or performance of an employee. There must be some nexus between the rule and the employment. The term "misconduct" is limited to conduct evincing such willful or wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee; or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent, or evil design; or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

When defining "misconduct connected with employment," the Supreme Court of Illinois specifically rejected the position that, in order to establish misconduct connected with work, it is necessary for an employer to show that the conduct actually or could have harmed the employer.

A number of jurisdictions have denied unemployment compensation to employees whose off-duty acts constituted misconduct connected with work. See *Prebula v. Arizona Dept. of Econ. Sec.*, 138 Ariz. 26, 672 P.2d 978 (1983) (benefits denied after employee embezzled funds of fraternal organization); *Oudinot v. Un. Comp. Bd. of Rev.*, 78 Pa. Commw. 150, 467 A.2d 84 (1983) (benefits denied due to employee's sexual relationship with 17-year-old girl); *Gregory v. Anderson*, 14 Wis. 2d 130, 109 N.W.2d 675 (1961) (benefits denied due to off-duty alcohol consumption). See Annot, 35 A.L.R.4th 691, and cases cited therein.

The district court found a most difficult aspect of our case to be the lack of objective evidence as to whether Porter was under the influence of marijuana while at work. The district judge observed that the level of alcohol in a person's blood can be accurately measured and can be evaluated on the basis of recognized standards, but the same is not true for marijuana. Proof of being under the influence of marijuana is far more subjective. The district judge found that there was no evidence to suggest

that Porter was under the influence of marijuana while at work.

The reliability and accuracy of drug testing have been widely criticized by other jurisdictions. Some of the criticism has been directed at the EMIT test for marijuana because it can (1) register a positive test after passive inhalation of marijuana and (2) yield frequent false positive results. See generally Rothstein, *Screening Workers for Drugs: A Legal and Ethical Framework*, 11 Employee Rel. L. J. 422 (1985). Due to the unreliability of the EMIT, it is recommended that a positive result be confirmed by alternate testing. The analytical method considered by experts to be the most conclusive method of confirming positive results is the GCMS test. See Survey, *Survey of the Law on Employee Drug Testing*, 42 U. Miami L. Rev. 553, 563-65 (1988). Porter's initial EMIT test was confirmed by a repeat test as well as subsequent GCMS testing. The drug screen conducted was the most reliable available and, in fact, conformed to federal guidelines which require all federal employers to use GCMS to confirm positive test results. See 42 U. Miami L. Rev. at 566 (citing Mandatory Guidelines for Federal Employee Drug Testing Programs, Daily Lab. Rep. [BNA] No. 70, at E-14 [Apr. 12, 1988]).

The drug tests used will detect traces of marijuana in a person's system for approximately 30 days after use. The tests cannot provide more refined information, such as whether the person is under the influence of marijuana or when the person used the substance during the 30-day period. Marijuana can impair motor functions for up to 12 hours after its ingestion. *Glide Lumber Prod. Co. v. Emp. Div. (Smith)*, 86 Or. App. at 671.

The policy established by NGC is a preventive one which seeks to lessen the probability of serious accidents in the workplace. NGC argues that, because of the long-lasting effects of drugs, off-duty use of drugs is prohibited because such use is reasonably likely to result in harm to the employer's interest. The threat posed by employee drug use is not only against public policy, but is particularly dangerous when employees are engaged in the operation of heavy equipment, work on wallboard production lines, and use extremely hazardous materials, as in this case. The employer states: "The use of drugs either on or off the job in the employer's industry poses unacceptable risks to

both the public and employee safety." The district court, following the reasoning of *Glide Lumber*, concluded that, in order to deny the employee benefits, the employer must show by a preponderance of the evidence that the employee's off-the-job misconduct had an actual on-the-job impact.

K.S.A. 1988 Supp. 44-706(b) provides that an employee *shall* be disqualified for unemployment compensation benefits if the employee has been discharged for misconduct "*connected* with the individual's work." The statute further defines misconduct as a "violation of a duty or obligation reasonably owed the employer as a condition of employment" and requires that the facts show a "[w]illful and intentional action which is substantially adverse to the employer's interests."

An employee's conduct off the working premises and outside the course or scope of his employment is generally not considered misconduct in connection with employment. There are circumstances where the conduct is so closely connected with the business interests of the employer as to warrant disqualification for unemployment benefits. The provisions of an unemployment compensation statute relating to the disqualification to receive unemployment compensation benefits in the case of a discharge for misconduct are intended to deny unemployment compensation to a claimant who is discharged because of misconduct, regardless of when or where it occurred, so long as such misconduct is in law connected with the employee's work. There is no merit to the argument that an act of misconduct relating to the private life of an employee is connected with his employment. The fundamental issue is whether the misconduct adversely affected the employee's ability and capacity to perform his duties.

Our decision declaring the right of an employee to collect unemployment benefits, when he or she has been discharged for an off-the-job violation of his employer's rules, must be made by balancing two conflicting public policies. Under the public policy as stated by our legislature: (1) a person cannot use or abuse certain substances; and (2) an unemployed worker has a qualified right to receive benefits from the fund. Though the legislature has not determined in unequivocal terms which public policy should prevail, it has enacted statutory provisions from which the superior public policy can be inferred. Under the

statutory provisions and our prior case law, a person claiming benefits under the Kansas Employment Security Law is entitled to a liberal interpretation of the law. *Goodyear Tire & Rubber Co. v. Employment Security Board of Review*, 205 Kan. 279, 283, 469 P.2d 263 (1970) (citing *Pickman v. Weltmer*, 191 Kan. 543, 382 P.2d 298 [1963]); *Southwestern Bell Telephone Co. v. Employment Security Board of Review*, 189 Kan. 600, 371 P.2d 134 (1962), 93 A.L.R.2d 1312; *Erickson v. General Motors Corporation*, 177 Kan. 90, 276 P.2d 376 (1954).

In addition, the burden of proof to establish that a former employee is disqualified from benefits under K.S.A. 1988 Supp. 44-706(b) is upon the employer, and must be proved by a preponderance of the evidence. *Farmland Foods, Inc. v. Abendroth*, 225 Kan. 742, 594 P.2d 184 (1979). The district court held, because of the inability of the drug screen to determine whether the use of the substance had an actual on-the-job effect, the employer had failed to show by a preponderance of the evidence that the employee was disqualified from receiving benefits under the Kansas Employment Security Law.

An employer's rule governing the off-duty conduct of his employees must have a reasonable relationship to the employer's interests before a violation thereof will constitute misconduct barring eligibility for unemployment compensation benefits. The question of the reasonableness of such a rule is to be tested by the rule's relationship to the business interests of the employer.

Under K.S.A. 1988 Supp. 44-706(b)(1), off-duty drug use cannot be construed as a "willful or intentional failure to perform duties in a satisfactory manner." To exclude a discharged employee from unemployment benefits for off-the-job misconduct, the off-duty misconduct must be work connected and reasonably related to the employer's business. In the absence of evidence that an employee's drug usage had actual on-the-job impact, an employee's dismissal for failing a urine drug test based on off-the-job drug usage does not disqualify the employee from receiving unemployment compensation benefits.

Affirmed.

MILLER, C.J., and McFARLAND, J., dissenting.