(839 P.2d 49)

No. 67,371

BARBARA HELMICK, *Appellant,* v. KANSAS EMPLOYMENT SECURITY BOARD OF REVIEW and UNIFIED SCHOOL DISTRICT NO. 349, STAFFORD COUNTY, KANSAS, *Appellees.*

Opinion filed September 18, 1992.

*Wayne E. Smith,* of Hutchinson/Reno County Legal Services, of Hutchinson, for appellant.

*James R. McEntire,* of Topeka, for appellee Employment Security Board of Review.

Before BRISCOE, C.J., REES and GERNON, JJ.

REES, J.: This is an appeal by petitioner Barbara Helmick from the district court judgment affirming a Kansas Employment Security Board of Review (ESB) decision denying unemployment compensation benefits to Helmick. The outcome of the referee's determination, ESB's determination, and the district court judgment was, in each instance, that Helmick is disqualified for benefits. The case comes before us for appellate review of the district court's decision made upon its judicial review of the ESB determination. We affirm.

The Act for Judicial Review and Civil Enforcement of Agency Actions (the Act), K.S.A. 77-601 *et seq.,* which creates only procedural rights and imposes only procedural duties additional to those created and imposed by other statutes, applies here because of its enactment effective July 1, 1984, (L. 1984, ch. 338) and because ESB's denial of benefits was a non-exempt agency action. See K.S.A. 77-603. The district court judgment was entered upon that court's judicial review of ESB's action.

Helmick first contends that her conduct was not so substantially adverse to her employer as to satisfy the statutory definition of

"misconduct," which would disqualify her from unemployment benefits.

Before the district court, it was Helmick's burden to prove the invalidity of ESB's action. See K.S.A. 77-621(a)(1). Whether ESB's action was valid is to be tested in accordance with the standards of judicial review provided in K.S.A. 77-621. K.S.A. 77-621(c) provides:

"(c) The [district] court shall grant relief only if it determines any one or more of the following:

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole . . . ."

K.S.A. 1990 Supp. 44-706 directs:

"An individual shall be disqualified for benefits:

. . . .

"(b) If the individual has been discharged for misconduct connected with the individual's work . . . .

"(1) For the purposes of this subsection (b), 'misconduct' is defined as a violation of a duty or obligation reasonably owed the employer as a condition of employment. In order to sustain a finding that such a duty or obligation has been violated, the facts must show: (A) Willful and intentional action which is substantially adverse to the employer's interest, *or* (B) carelessness or negligence of such degree or recurrence as to show wrongful intent or evil design. . . .

"(2) An individual shall not be disqualified under this subsection (b) if the individual is discharged under the following circumstances:

. . . .

"(B) the individual was making a good-faith effort to do the assigned work but was discharged due to: . . . (iii) isolated instances of ordinary negligence or inadvertence . . . ." (Emphasis added.)

Within the text of the referee's now pertinent written decision, mailed May 21, 1991, this is stated:

"[T]he majority of the evidence presented by the employer indicates that the claimant was acting in a manner that could be considered to be negligent or inadvertent or further that she made good faith errors in judgment or discretion. Those, in and of themselves, do not constitute misconduct. However, the incident, whereby the claimant refused to report to the principal's office, is more than a good faith error in judgment. Rather, it is an intentional and willful act of defiance or in other words, insubordination. Insubordination is defined as a refusal to obey directions. This is specifically what happened in this case. The employer has a right to expect its employees

to perform various aspects of their employment as instructed. The claimant was instructed by her superiors to report to [the principal's] office and her refusal to do so was a continuation of her refusals to obey directions. Insubordination of this nature is clearly adverse to the employer's business interest and, therefore, these willful and intentional acts constitute misconduct. The examiner's decision is correct and should be affirmed.

". . . The claimant is disqualified for benefits . . . because the claimant was discharged for misconduct connected with the work."

The following decision of ESB, mailed June 3, 1991, recites that "[t]he Board, after reviewing all the evidence and being fully advised in the premises, adopts the findings of fact and decision of the Referee rendered in this matter as though fully incorporated herein, and finds that the decision of the Referee should be affirmed."

On October 11, 1991, the district court affirmed the ESB decision. As reported by its written decision, the court found and held:

"[T]he claimant's failure to report to the superintendent's office in order to discuss complaints regarding her job performance was a violation of a duty that was reasonably owed to her employer as a condition of her employment. Her refusal to report was also a willful or intentional action that was substantially adverse to her employer's business interests because it is absolutely essential for an employee to follow the reasonable instructions of her employer in order to maintain an efficient business operation."

Thus, as this case comes before us, Helmick has been disqualified for benefits upon holdings that she was discharged for misconduct connected with her work, with the misconduct having been action that was in violation of a duty or obligation reasonably owed to her employer, Unified School District No. 349, as a condition of her employment and upon a factual showing that her conduct was willful and intentional action substantially adverse to her employer's interest.

By the language of K.S.A. 1990 Supp. 44-706(b), multiple occurrences of misconduct, as statutorily defined, are not required to disqualify a claimant for receipt of unemployment compensation benefits. Nothing in the employment security law, K.S.A. 44-701 *et seq.,* indicates that more than one act of misconduct is necessary to disqualify a claimant; a single instance of misconduct is sufficient to disqualify a claimant where the individual has been discharged for misconduct.

We are satisfied and conclude that, when measured against the yardstick of K.S.A. 1990 Supp. 44-706, (1) insubordination may be found to be misconduct as defined by that statute, and (2) only a single instance of insubordination falling within the statutory definition of misconduct is sufficient to disqualify a claimant for unemployment compensation benefits. See *Fritsche Unempl. Compensation Case*, 196 Pa. Super. 574, 575, 176 A.2d 186 (1961).

Helmick next contends she cannot be disqualified for employment benefits because her conduct met the statutory exception for "isolated instances."

When read in context, the K.S.A. 1990 Supp. 44-706(b)(2)(B)(iii) isolated instances exception from benefits disqualification applies to cases where the discharge was due to negligence or inadvertence. As shown by the evidence and as found and determined by the referee, ESB, and the district court, Helmick was not discharged due to negligence or inadvertence. Unified School District No. 349 discharged her for misconduct. K.S.A. 1990 Supp. 44-706(b)(2)(B)(iii) does not operate to require multiple instances of misconduct to disqualify.

The nature and occurrence of the material events providing the background for this case are not substantially questioned. They will be roughly summarized.

Helmick was hired as a custodian by the Stafford County School District on June 1, 1986. Her duties included cleaning at Central Elementary School, the intermediate school, and the high school.

In the spring of 1989, Superintendent of Schools Carl Combs, Helmick's supervisor, happened to go to the basement of Central School and caught her smoking. Helmick was told of the statute prohibiting smoking in school buildings and she promised to comply.

On September 20, 1990, Helmick was told by her immediate supervisor that she was to clean the stairs of the high school during the 90 minutes she was assigned to spend at the high school. Helmick wanted to talk to Combs because she had not been informed of the new assignment by him. She became upset and cried while in Combs' office. Helmick told Combs she did not have time to spend 90 minutes at the high school; she complained she did not have time to clean the stairs every day during

her 90 minutes at the high school. According to Helmick, Combs cussed and screamed at her for one hour.

After the meeting, Helmick returned to her work at Central. Later that day, Combs was told that Helmick was vacuuming immediately outside or near classrooms while testing was being conducted inside. She told the school principal that Combs told her to do so. Combs sent word to Helmick to see him again in his office. The person who gave Combs' instruction to Helmick was told by Helmick that she was not going back because "all he did was cuss and scream at me and I don't have nothing else to say."

Combs went to look for Helmick in Central School. He found an ashtray and two packages of cigarettes in the basement. When confronted by Combs, Helmick admitted that she had smoked in the building, but not on that day. Combs asked her to come to his office to talk and her response was, "No, I don't have anything to say to you." Combs told her, "You understand that that is insubordination?" and Helmick replied, "What does that mean? That I'm fired?" Combs stated, "No, not at this time."

On September 21, 1990, Combs handed Helmick a written notice of termination of her employment. The notice listed three reasons for termination: (1) failure to follow her assignment to work in the high school for 90 minutes per day; (2) failure to report to Combs' office on September 20, 1990; and (3) smoking in the Central School building after Combs' directive not to do so in the spring of 1989.

On appeal, Helmick has not established to our satisfaction that reversible error has occurred. While there may be differing results reported in foreign decisions discussing insubordination as misconduct, we find persuasive the statement in *Rowe v. Hansen,* 41 Cal. App. 3d 512, 523, 116 Cal. Rptr. 16 (1974), that "[w]hen the authority of those in whom the employer has confided responsibility for the day-to-day operation of the business is flouted, the interests of the employer suffer." An employee's intentional flouting of the authority of those placed in charge of an employer business or governmental entity necessarily injures the interests of the employer by undermining the position of those responsible for the exercise of the authority delegated.

In sum, we find that in this case the findings and decisions of the referee, ESB, and the district court are supported by facts shown by substantial evidence and findings appropriately made hereon. All requisite findings for the results presented for our review have been made.

Affirmed.