No. 78,601

TAMATHA POUNCIL, *Appellee,* v. KANSAS EMPLOYMENT SECURITY BOARD OF REVIEW and GREDE FOUNDRIES, INC. *Appellants.*

(997 P.2d 715)

Opinion filed February 4, 2000.

*James R. McEntire,* of Topeka, argued the cause and was on the brief for appellant Kansas Security Board of Review.

*Michael L. Snider,* of Snider & Seiwert, L.L.C., of Wichita, argued the cause, and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This case concerns a denial of unemployment compensation benefits. A divided Court of Appeals reversed the district court's award of unemployment benefits to Tamatha Pouncil and reinstated the Kansas Employment Security Board of Review's (Board) denial of benefits. The Court of Appeals held Pouncil's failure to disclose a prior, material work-related injury on employment forms constitutes "misconduct" under K.S.A. 1998 Supp. 44-706(b)(1). 25 Kan. App. 2d 740. We granted Pouncil's petition for review. Examining the meaning of misconduct in K.S.A. 1998 Supp. 44-706(b)(1) is an issue of first impression. The statute was amended in 1995 to relax the standard for finding employee mis-

conduct. See SB 106 Bill Summary, Minutes of the House Committee on Business, Commerce & Labor, March 20, 1995.

The three questions for resolution are whether: (1) the failure to disclose a prior, material, work-related injury on Pouncil's employment forms is misconduct under K.S.A. 1998 Supp. 44-706(b)(1); (2) Pouncil provided material, false information to her employer; and (3) the employment forms violate the American with Disabilities Act (ADA) 42 U.S.C. § 12101 *et seq.* (1994).

The answer to questions one and two is, "yes." The answer to question three is, "no."

## FACTS

Grede Foundries, Inc. (Grede) hired Pouncil as a janitor in July 1995. She began work 3 days later. After the offer of employment, Grede asked Pouncil to fill out two employment questionnaires relating to medical history. The first was a "Health and Medical Record" (HMR). The second was a "Medical and Noise History Questionnaire" (MNHQ).

The first question on the HMR asked: "Have you ever been in a hospital or institution for observation, diagnosis, operation, or treatment?" Pouncil checked a blank labeled "yes." She explained that she had an "amputation of left tip of index finger." The other two HMR questions important to our discussion were: "Have you ever sustained a serious injury or illness where hospitalization was not required?" and "Have you ever filed a compensation claim or received benefits as a result of an industrial injury or disease?"

Pouncil answered "no" to both questions. At the end of the HMR, she signed under the following statement: "I hereby state that the information given by me on this physical exam is true and complete to the best of my knowledge. I also understand that any false information given by me is grounds for discharge, now or later."

Although the record is limited, it does touch on Pouncil's employment history. Eleven years before she took her position at Grede, Pouncil worked at Microphoto Data (Microphoto). While working for Microphoto, Pouncil sustained a partial amputation of her left index finger. She did not say how long she worked for

Microphoto. After Microphoto, she apparently worked for "LSI," also referred to as "Avery Dennison." The injuries in question here occurred during her employment at LSI. She also worked for 5 months in a Sears Telemarketing office. Pouncil said she had no problems with her wrist while working in the telemarketing office. The date of the telemarketing employment is unclear. When the telemarketing office closed, Pouncil assumed the role of housewife. Her job at Grede followed.

Pouncil had 1 week of orientation at Grede before beginning her assigned duties. After 1 week of janitorial work, she claimed a work-related injury to her wrist (carpal tunnel syndrome). She complained of swelling and tingling in her right wrist and fingers. An administrative law judge (ALJ) held a preliminary workers compensation hearing on November 16, 1995. At the hearing, Pouncil contradicted her HMR answers. She said she received workers compensation for the partial amputation of her finger but had never sustained any other work injuries. She also said she had never before had a doctor look at her wrist nor had she received any other workers compensation benefits.

Grede terminated Pouncil on March 13, 1996. Grede's Human Resources Director, Terry Duckworth, told Pouncil that her answers on the HMR and her testimony at the preliminary hearing were contradictory. Pouncil filed for unemployment compensation. A Kansas Department of Human Resources (KDHR) examiner found that Pouncil was terminated "for conduct or an attitude," not for misconduct or breach of a duty to Grede. Consequently, the examiner ruled that she was eligible for unemployment compensation. Grede appealed to the KDHR.

## The KDHR Referee and the Review Board

The KDHR referee held a full evidentiary hearing. Grede was represented by counsel; Pouncil was not. Grede put on new evidence that Pouncil had injured her right wrist and hand between late 1993 and early 1994 and had received workers compensation for that injury. Duckworth testified he received this information before terminating Pouncil's employment and it, combined with

her answers on the questionnaire, formed the basis for her dismissal.

Grede presented medical records from a clinic concerning Pouncil's previous hand and wrist injury. During her testimony before the referee, Pouncil verified that she sustained an injury while working at LSI. A metal rack fell on her right hand, causing a contusion. The clinic treated Pouncil for this injury. Upon a repeat visit, the physician also diagnosed Pouncil with tendonitis in her right wrist. Pouncil had work restrictions because of the injury. She wore a splint on her right hand and was restricted from any work that required "gripping, squeezing, tugging, pulling, [or] pushing" with her right hand. Pouncil also told the referee that an earlier employer had filed a workers compensation claim for her previous injury. The reason she gave for the employer filing is that the accident was seen by others and the injury was uncontroverted.

The referee asked Pouncil about her failure to disclose the previous work injury and related workers compensation claim. Pouncil responded, "I wasn't thinking," and "I honestly wasn't thinking." During cross-examination, she stated, "I didn't think about that, I mean, yes I did hurt my hand but, and I did see a doctor for it. But [it's] not as much as you guys are making it out to be."

The referee concluded: (1) Pouncil was dishonest on the HMR, (2) it was "highly improbable that the claimant simply 'forgot' that she received workers compensation benefits from such a serious injury," (3) this dishonesty constituted "misconduct," under K.S.A. 44-706(b)(1), (4) Pouncil was ineligible for unemployment benefits, and (5) the examiner's decision should be reversed. The referee entered a nunc pro tunc order requiring Pouncil to repay any unemployment benefits she may have received.

Pouncil appealed to the Board. Without further hearings, the Board adopted the referee's decision and affirmed the denial of benefits.

### The District Court's Decision

Pouncil filed a petition for judicial review in district court. The parties stipulated to the evidentiary record developed in the administrative hearings. The district court reviewed the case solely

on the basis of the record and reversed the Board's decision. The district court reasoned there was no misconduct because Pouncil's previous claims and benefits were immaterial and insignificant to her work at Grede. The district court said it was unreasonable to expect Pouncil "to report to [Grede] every temporary injury or condition that she has had, including contusions and temporary tendinitis conditions that did not result in any workers compensation claims filed by *her*." (Emphasis added.) Notably, the court ruled that the referee and Board exceeded their jurisdiction in denying Pouncil benefits based upon what occurred in the workers compensation hearing. The district court did not reach issues raised under the ADA. The Board and Grede both filed notices of appeal.

## The Court of Appeals Opinion

The Court of Appeals reversed the district court. It held that: (1) as a matter of law, an employee's failure to disclose a prior, material work-related injury on employment forms constitutes misconduct as defined in K.S.A. 1997 Supp. 44-706(b)(1); (2) there was substantial evidence in the record to support the findings of the referee and the Board that Pouncil lied about past work injuries and associated compensation, issues material to Pouncil's work at Grede; (3) Pouncil owed a duty of honesty to Grede in completing employment questionnaires; (4) the ADA did not apply to Pouncil's case; and (5) the district court's holding that the referee impermissibly relied on evidence from the worker's compensation hearing was erroneous. 25 Kan. App. 2d at 749-50.

The dissenting judge referenced Pouncil's medical records of prior injury. She concluded: (1) The record did not support a finding that the previous injury was "serious," and (2) the prior receipt of workers compensation benefits did not meet the materiality test set forth by the majority. 25 Kan. App. 2d at 751-753.

## DISCUSSION

### The Court of Appeals set out the parties' claims.

"The Board claims Grede was owed a duty of honesty in completing employment documents. It claims this duty exists in part so Grede can place its employees in positions that will not aggravate preexisting injuries. The Board claims Pouncil breached this duty, which amounts to misconduct under K.S.A. 1995 [now 1998]

Supp. 44-706(b)(1). The Board requests that the judgment of the district court be reversed and the Board's decision reinstated.

"Pouncil claims the district court's decision should be affirmed because there is no evidence in the record that her wrist injury at Grede was related to two previous workers compensation claims. As a result, she claims she did not breach a duty to Grede and, therefore, is not guilty of misconduct. Furthermore, Pouncil claims the referee and the Board exceeded their authority when they considered evidence from the workers compensation hearing in this case." 25 Kan. App. 2d at 744.

Our initial inquiry examines whether the failure to disclose a prior, material work-related injury on employment forms constitutes misconduct as that term is defined in K.S.A. 1998 Supp. 44-706(b)(1).

K.S.A. 77-621(c)(4) provides that the court shall grant relief if it determines that the agency erroneously interpreted or applied the law.

The scope of our review is defined by K.S.A. 77-621(c). The burden of proving the invalidity of the Board's order is on Pouncil. The Board is the administrative body charged with enforcing K.S.A. 1998 Supp. 44-706(b)(1). Under the doctrine of operative construction, we may give great weight and judicial deference to the Board's interpretation. See *In re Application of Zivanovic,* 261 Kan. 191, 193, 929 P.2d 1377 (1996). Our review of evidentiary matters before the Board is made in the light most favorable to the Board. *Barnes v. Employment Security Board of Review,* 210 Kan. 664, Syl. ¶ 4, 504 P.2d 591 (1972). *Barnes* teaches that

"[t]he findings of the Employment Security Board of Review as to the facts, if supported by evidence and in the absence of fraud, are conclusive and may not be set aside by the district court.

"While a court sitting as a Board of Review might have reached a different conclusion on conflicting evidence, or in determining a preponderance of the evidence, it is, nevertheless, bound to uphold the findings of the board if there is relevant evidence before the board to support its findings." 210 Kan. 664, Syl. ¶¶ 5, 6.

Our analysis begins by examining K.S.A. 1998 Supp. 44-706:

"An individual shall be disqualified for benefits:

. . . .

"(b) If the individual has been discharged for misconduct connected with the individual's work. . . .

(1) For the purposes of this subsection (b), *'misconduct' is defined as a violation of a duty or obligation reasonably owed the employer as a condition of employment.*" (Emphasis added.)

We note the statute was amended in 1995. See L. 1995, ch. 235, § 3. The 1995 amendments changed 44-706(b)(1) by deleting the language in bold face:

"For the purposes of this subsection (b), 'misconduct' is defined as a violation of a duty or obligation reasonably owed the employer as a condition of employment. **In order to sustain a finding that such a duty or obligation has been violated, the facts must show: (A) Willful and intentional action which is substantially adverse to the employer's interests, or (B) carelessness or negligence of such degree or recurrence as to show wrongful intent or evil design.**" (Emphasis added.)

Employees discharged for "misconduct" in Kansas are not eligible for unemployment compensation benefits. K.S.A. 1998 Supp. 44-706(b). However, Pouncil is entitled to a liberal interpretation of the law. *Goodyear Tire & Rubber Co. v. Employment Security Board of Review*, 205 Kan. 279, 283, 469 P.2d 263 (1970). The primary question is whether untruthful answers on employment questionnaires constitute "misconduct" under 44-706(b)(1). Secondary questions are: (1) What evidence is required to show answers are untruthful; (2) must the untruthful answers be material to the employer; and, (3) if so, what is the test of materiality?

Although there are no Kansas cases addressing whether it is misconduct for an employee to give untruthful answers on pre- or post-employment documents, misconduct under the former version of 44-706(b)(1) has been addressed in other contexts. In *National Gypsum Co. v. Kansas Employment Security Bd. of Review*, 244 Kan. 678, 686-87, 772 P.2d 786 (1989), we held that off-duty misconduct (drug use) must be related to both the work of the employee and the employer's business to disqualify a claimant from benefits. In *Helmick v. Kansas Employment Security Bd. of Review*, 17 Kan. App. 2d 444, 839 P.2d 49 (1992), 44-706 misconduct was found where an employee failed to perform a specific work assignment and refused to report to and discuss the matter with a

supervisor. *Helmick* held "intentional flouting of the authority" was the type of misconduct contemplated by 44-706(b)(1). 17 Kan. App. 2d at 447-48.

The Board decided that Pouncil's conduct fit the 44-706(b)(1) definition of misconduct. Our standard of review suggests we should give deference to the Board's interpretation of the statute. *In re Application of Zivanovic,* 261 Kan. at 193. The KDHR referee decided:

"An employee has a duty to be honest with the employer regarding personnel and health matters. After the employee is hired, the employer has the right to know of an employee's medical condition so that the employer can place the employee in a position which will not aggravate the employee's pre-existing condition or injury. The employee is protected from further injury. Likewise, the employer is better able to control [its] workers' compensation claims."

The Board adopted the referee's decision that disclosing requested health information is a 44-706(b)(1) duty reasonably owed by an employee to an employer.

The Court of Appeals held that the duty here is to disclose *material information* requested by employers. The Court of Appeals examined *Aaron's Automotive v. Div. of Emp. Sec.,* 926 S.W.2d 229 (Mo. App. 1996) and *Sill-Hopkins v. Unemp. Comp. Bd. of Rev.,* 128 Pa. Commw. 506, 563 A.2d 1288 (1989). Both *Aaron's Automotive* and *Sill-Hopkins* deal with misrepresentations on employment-related documents. Both cases hold that such omissions, when material, are grounds for the denial of unemployment benefits. An annotation at 23 A.L.R. 4th 1273 discusses the issue.

Many jurisdictions addressing false or misleading information given by employees hold that if the information is material and the omission was intentional, unemployment benefits are properly denied. See *e.g., Casias v. Indust. Comm.,* 38 Colo. App. 261, 554 P.2d 1357 (1976) (where employee failed to disclose epileptic condition, if that information was material, employee could be denied benefits); *Roundtree v. Board of Review,* 4 Ill. App. 3d 695, 281 N.E.2d 360 (1972) (where employee failed to disclose prior felony conviction, it was false answer to material question constituting misconduct in connection with employment); *Matter of Rosedietcher (Levine),* 33 N.Y.2d 377, 308 N.E.2d 686 (1974) (where

employee did not reveal arrest record on employment application for position in brokerage firm, court found a willful, false statement of a material fact was misconduct).

We focus on whether the relaxed definition of misconduct under K.S.A. 44-706(b)(1) has been met. The legislature removed the following requirements from the statute in 1995: "willful and intentional," "substantially adverse to the employer's interests," "carelessness or negligence," "to show wrongful intent or evil design." These changes show that the legislature clearly sought to lower the standard for finding "misconduct" under 44-706(b)(1). The Court of Appeals concluded that "Pouncil owed a duty of honesty to her employer" in filling out the HMR because Grede needs truthful information in making work assignments. 25 Kan. App. 2d at 749. We agree with respect to material information. Such a duty is a reasonable interpretation of 44-706(b)(1) as "a duty or obligation reasonably owed the employer as a condition of employment." It is also reasonable to construe an employee's false answers about prior material injuries as a violation of that duty or obligation. Pouncil owed a duty of honesty to reveal prior material injuries when she completed employment questionnaires.

Both Pouncil and the Court of Appeals' dissent take exception to the fact that there is no evidence connecting Pouncil's prior injuries to her current ones. Focusing on a "connection" between the injuries fails to recognize the duty at issue. The duty is to provide truthful information on material matters when an employer inquires. The breach of that duty is not in re-injuring the prior injury but in concealing information an employer is entitled to. Grede was entitled to information that would protect its employee and itself from workplace injuries.

The rule adopted by the Court of Appeals is consistent with the K.S.A. 44-706(b)(1) definition of misconduct.

While the adopted rule is reasonable in the abstract, its application is not pro forma under the facts of this case. The Court of Appeals seemed to assume, without deciding, that Pouncil's answers were untrue and that her omission was intentional. We next examine whether Pouncil's omissions meet the misconduct test.

## Pouncil's Omissions

Our inquiry is two fold. First, we must decide whether Pouncil's statements on the HMR were false. Second, if the statements were false, we must decide whether they were material. We acknowledge the referee as factfinder. We are reviewing the referee's initial finding that Pouncil lied. As the factfinder, the referee's decision should be given deference in our analysis. See *Reed v. Kansas Racing Comm'n*, 253 Kan. 602, 609-10, 860 P.2d 684 (1993).

### (1) Prior Injuries

The Court of Appeals concluded, based on the medical clinic records, that Pouncil's prior injuries qualified as a "serious injury or illness" requiring disclosure on the HMR. The conclusion that the omission was intentional followed. The Court of Appeals focused on the fact that Pouncil saw Dr. Wilson seven times over a 2-month period for the injuries. The opinion did not explore whether reasonable persons could disagree about the seriousness of Pouncil's prior injuries or the meaning of the question.

The HMR question asked Pouncil whether she had "ever sustained a *serious injury or illness where hospitalization was not required*." The Court of Appeals' dissent argued that to conclude Pouncil lied, the question must be reasonably free from ambiguity. We agree. Pouncil saw a company doctor seven times after the metal rack fell on her hand. However, the medical records alone do not firmly establish her injury to be "serious" as that term is ordinarily defined. Dr. Wilson evaluated the injury and described it as having "minimal edema," and "no skin discoloration or abrasion." Pouncil wore a splint for some short periods of time. Dr. Wilson indicated that Pouncil had sustained no permanent impairment to her right wrist.

Analyzing the record, it is apparent that the referee and the Court of Appeals concluded that Pouncil lied based on her testimony before the ALJ in the workers compensation proceeding. It is this testimony, rather than the wording on the HMR, that suggests a serious injury which Pouncil attempted to conceal from Grede. The district court held that the referee should not have considered the ALJ hearing testimony. The Court of Appeals re-

versed the district court on that point. We find no basis for the district court's holding. The ALJ testimony is not discussed in the Court of Appeals' dissent.

During the workers compensation hearing, Pouncil failed to disclose both her employment at LSI and her prior wrist injury. The questions put to Pouncil at the hearing were definitely free from ambiguity:

"Q: Have you ever had an injury on the job in any form?
A: No, other than this [present complaint of carpal tunnel]."

. . . .

"Q: Have you ever had a doctor look at your wrist?
A: No."

It is these denials that permit a conclusion that Pouncil deliberately hid her prior injuries from Grede. From this deliberate concealment, one can infer that Pouncil's injury was serious, because why would one hide an injury that was not serious? In Pouncil's testimony before the referee, she tried to explain that she did not think the injury was serious. The referee did not believe her. The Board agreed with the referee. A review of Pouncil's testimony before the ALJ, combined with her medical records, supports the referee's and the Board's conclusion.

The record clearly shows that Pouncil had at least three work-related injuries while at LSI. Two of these injuries were to the right hand. On 10/17/93 a steel rack fell on Pouncil's hand. The diagnosis was a contusion. Pouncil returned every 7 days for the doctor to assess her hand. On the fourth visit, Pouncil was returned to full duty with no work restrictions. Two days later, on 1/6/94, Pouncil reported a second injury—that her wrist was swollen. The same physician diagnosed Pouncil with traumatic de Quervain's disease (tendonitis). The physician treated Pouncil and reported she was unable to return to work. After two more visits, Pouncil was returned to full duty on 1/20/94 after nearly 2 months of weekly visits to her doctor.

The medical records show that Pouncil sustained a back injury which she also failed to report on the HMR. On 10/4/93 (only two weeks before injuring her hand), Pouncil reported that her back locked up at work. She went to the emergency room for treatment.

Pouncil told her doctor she had been in car a accident 3 years before and injured her back. She also reported lower back muscle spasms.

Pouncil admitted in the workers compensation hearing that she may have missed some work because of her December 17, 1993, hand injury and did miss a week of work as a result of her January 6, 1994, wrist injury.

Pouncil did not reveal her employment history with LSI when filling out Grede's noise questionnaire. She was asked to list past employers beginning with most recent and working backwards. Pouncil listed U.S.D. 259 and Sears Telemarketing. She does not list LSI where her three previous injuries occurred.

She also did not disclose the LSI employment in her workers compensation hearing on November 16, 1995, before the ALJ:

Q: "What jobs have you held prior to Grede Foundries?"

Pouncil answered that she was a housewife before working at Grede, and before that, she worked at Sears Telemarketing.

"Q. Two years ago you were working at Sears Telemarketing?
"A: Uh-huh, and I worked there maybe five months."

Pouncil actually worked at LSI 2 years before giving this testimony. Her denial of both working at LSI and sustaining any prior injuries was false and shows that she deliberately hid her prior injuries from Grede. Thus, it is the hearing testimony and its implications that remove the ambiguity from the HMR question and prove Pouncil's injury was serious and her answer false.

### (2) Workers Compensation Benefits

Turning to the issue of receiving workers compensation benefits, the HMR question was: "Have you ever filed a compensation claim or received benefits as a result of an industrial injury or disease?" The Court of Appeals held that Pouncil lied when she answered "no." The district court found that Pouncil did not lie about the hand/wrist benefits because she herself did not file for the benefits, her employer filed for her. The district court held that the disclosure of the partial amputation was sufficient to put Grede on notice

that Pouncil probably received workers compensation benefits for that injury.

In Pouncil's testimony before the ALJ, she admitted receiving benefits for the finger injury, but she denied ever receiving any other workers compensation benefits. When the referee asked about her wrist injury, Pouncil admitted receiving workers compensation benefits for that injury as well. She said that she did not file the claim, her employer did it automatically.

Again, it is the testimony before the ALJ that suggests Pouncil deliberately hid her injury and receipt of workers compensation benefits for that injury. The fact that Pouncil admitted receiving the benefits for her finger injury but denied ever receiving other benefits shows she was concealing it. If Pouncil remembered receiving workers compensation benefits for her finger 11 years ago, it is logical she would remember receiving benefits for her wrist just 2 years ago. That Pouncil herself did not file the claim, without more, would tend to show she did not willfully provide false information on the HMR. However, that she denied during her workers compensation hearing ever receiving benefits for her wrist injury points to a willful omission.

## Materiality

The test of materiality here is whether the employer requires knowledge of the injury to ensure that the employee is not put at risk of aggravating a preexisting condition or injury. The question is whether the false statements here were material. Pouncil failed to reveal that she had twice received workers compensation benefits in the past. She also failed to reveal that she injured her back and right wrist and hand in late 1993 and early 1994. The wrist and hand injury were material to her work as a janitor because this job requires substantial use of the wrists and hands in cleaning Grede's foundry facility. Thus, Pouncil's misrepresentations were material to her qualifications for the job at issue. See *Sill-Hopkins*, 128 Pa. Commw. at 512. We agree with the *Sill-Hopkins* analysis, "[w]hether or not a given misrepresentation is material depends upon the factual matrix present in each case." 128 Pa. Commw. at 512.

### (1) Prior Injuries

The Board contends, as the referee concluded, that employers need information about an employee's prior injuries. By having such information, employees can be protected from aggravating their injuries. Also, the employer is better able to control workers compensation claims. In this context, an employee's purposeful failure to disclose a material prior injury is adverse to both the employer's and the employee's interests. If the employee does not disclose the injury, the employer is without the opportunity to prevent further harm. Public policy favors employers taking steps to prevent harm to employees.

Pouncil argues that, if she committed misconduct, it is not connected to her work. She contends that she continued to work for Grede for 7 months even with the painful carpal tunnel syndrome. Moreover, Pouncil observes that she did not engage in traditional acts of misconduct such as absenteeism, drinking alcohol, or taking drugs on the job. Pouncil fails to address the fact that her omission can be just as harmful to her employer and herself as drinking on the job. Drinking on the job causes impairment that can result in workplace injuries. Similarly, supplying false information about prior injuries can result in workplace injuries. When employers do not know that certain employees should not perform certain tasks, they cannot attempt to prevent future injuries which might result from the performance of those tasks. Pouncil was being hired for a job as a janitor. The job involved manual labor. After only 1 week of employment Pouncil allegedly sustained a work-related injury to her right wrist, the very same wrist for which she sought and obtained medical treatment for a work-related injury just 1 ½ years earlier. Under *National Gypsum,* K.S.A. 44-706(b)(1) misconduct must be connected with work. 244 Kan. at 686. Here, that connection is present because Grede is asking about injuries so that it can make appropriate work assignments. Grede was denied the opportunity to prevent Pouncil from re-injuring her wrist when she failed to disclose her prior injury. The question and answer were material to Pouncil's work at Grede.

### (2) Prior Workers Compensation Claims

It is less clear how the workers' compensation question was material. The question is duplicative of the prior injuries question as it relates to preventing future harm. Injuries resulting in workers compensation benefits might be material to Grede if the employee had not already revealed the injury, but otherwise, it would not be helpful under our test of materiality. Under the facts here, Pouncil's failure to reveal the receipt of benefits for her finger is not material because she listed the injury on the HMR. As to the wrist injury, Pouncil's actual receipt of benefits is only material because she failed to tell Grede of the injury.

Reasonable persons have disagreed on the issues throughout the long course of Pouncil's unemployment benefits claim. The initial examiner found no misconduct. The referee and Board concluded the opposite. The district court reversed, agreeing with the initial examiner. The Court of Appeals then reversed the district court. The fact that so many have disagreed about these issues is indicative of the evidentiary problems here. However, we do not play a factfinding role. There is substantial relevant evidence in the record to support the factual findings of the referee adopted by the Board. The legislature's 1995 policy change in relaxing the concept of K.S.A. 1998 Supp. 44-706(b)(1) misconduct plays a major role in our analysis. However, misconduct under K.S.A. 1998 Supp. 44-706(b)(1) should not result from an employee's inadvertence or a good faith misunderstanding in filling out employment forms. We affirm the Court of Appeals because Pouncil's testimony before the ALJ suggested that she falsely answered the questions on the HMR. In addition, we owe deference to the referee's findings of fact.

In her appellate brief, Pouncil makes a two-sentence argument that Grede's employment questionnaires violate 42 U.S.C. § 12112(d)(3) (1994) of the ADA.

Pouncil's ADA contention lacks merit. The ADA, both in the law and regulations, allows medical histories after an offer of employment. See 42 U.S.C. § 12112; 29 C.F.R. § 1630.14(b) (1999).

We affirm the Court of Appeals and reverse the district court.

ABBOTT, J., not participating.

MARLA J. LUCKERT, J., assigned.

DAVIS, J., dissenting: I respectfully dissent from the majority opinion and would reverse the Court of Appeals' opinion and affirm the district court. I agree with the principle of law that an employee's failure to disclose a prior, material work-related injury on employment forms is misconduct under K.S.A. 1998 Supp. 44-706(b)(1). However, I do not believe the evidence in this case establishes that Pouncil's failure to disclose was material.

In her dissent from the majority decision of the Court of Appeals, Judge Royse highlights the difficulty I have with the majority opinion in this case:

"I cannot concur with the majority's determination that these two transitory episodes involving a bruise and inflammation amount to material injuries which Pouncil had a duty to disclose. The test of materiality, the majority seems to say, is whether the employer requires knowledge of the injury in order to assure that the employee is not put at risk of aggravating a preexisting condition or injury. Under that test, these injuries were not serious. Pouncil sustained no preexisting condition or injury which could be aggravated; she had recovered. While the referee and the majority appear to assume that there is a connection between Pouncil's right wrist problems in 1993-94 and her subsequent claim for bilateral carpal tunnel syndrome, the record contains no evidence to support that assumption." 25 Kan. App. 2d at 751-52.

The majority opinion of this court makes the same assumption:

"After only 1 week of employment Pouncil allegedly sustained a work-related injury to her right wrist, the very same wrist for which she sought and obtained medical treatment for a work-related injury just 1½ years earlier."

However, the evidence of record fails to establish a connection between Pouncil's present and past injuries. Absent such evidence I would conclude that the statements made are not material.

The majority opinion rests upon that principle that an employee's responses to post-employment medical questionnaires are material because the employer uses this information to "make ap-

propriate work assignments." It may be said that any medical information concerning past injuries or the past medical condition of an employee will always provide valuable information to an employer in making appropriate work assignments. However, if such information would have no effect upon the employer's placement of the employee, it should not be considered material.

The two past injuries addressed in the majority opinion amounted to a bruised wrist and a swelling of the right wrist. Both occurred approximately a year and a half before Pouncil's carpal tunnel injury to the same wrist. The past injuries were not permanent, and Pouncil fully recovered from those injuries. There is no evidence to suggest that her past injuries created a weakened condition in her right wrist. Thus, her past injuries did not create preexisting problems or problems that might be aggravated by a new injury. It is difficult to conclude disclosure of the past injuries in this case would have caused the employer take any action other than allowing Pouncil to commence the work she had already been hired to do.

The majority appears to adopt the rule from *Sill-Hopkins v. Unemp. Comp. Bd. of Rev.*, 128 Pa. Commw. 506, 563 A.2d 1288 (1989), providing that unemployment benefits may be denied when a claimant's discharge stems from a false or incomplete statement on an employment application where such misrepresentations were knowing and material to the employees' qualifications for the job at issue. The majority then concludes that the wrist and hand injuries were material to Pouncil's work as a janitor because Pouncil used her wrists and hands on the job. However, because there is no evidence that Pouncil's prior injuries made her more vulnerable to or increased her risk of future injury, I would hold that her statements were not material to her qualifications for the job at issue.

LOCKETT and ALLEGRUCCI, JJ., join in the foregoing dissent.