(11 P.3d 85)

No. 84,410

REDLINE EXPRESS, INC., *Appellee*, v. STATE OF KANSAS EMPLOYMENT SECURITY BOARD OF REVIEW and RODNEY D. PATTISON, *Appellants*.

Opinion filed September 22, 2000.

*James R. McEntire*, of Topeka, for the appellant Kansas Employment Security Board of Review.

*Larry J. Putnam*, of Patton, Putnam & Hollembeak, of Emporia, for the appellee.

Before PIERRON, P.J., LEWIS, J., and PAUL E. MILLER, District Judge, assigned.

LEWIS, J.: Appellant Rodney D. Pattison was discharged by appellee Redline Express, Inc., (Redline) and sought unemployment compensation benefits. The Kansas Security Board of Review (Board) awarded Pattison benefits from December 12, 1998, and thereafter. On appeal, the trial court limited those benefits to the period of time from December 11, 1998, to December 24, 1998. The Board appeals from that decision.

We affirm the decision of the trial court.

Pattison had been employed by Redline for approximately 6½ years. On December 11, 1998, Pattison resigned from his job with Redline via written resignation, which stated that his last day of work would be December 24, 1998. Upon receiving Pattison's written resignation, Redline terminated his employment immediately, effective December 11, 1998. He was paid for 2 weeks' vacation and for 28 hours' sick pay but was not paid regular wages from December 11, 1998, to December 24, 1998. Pattison filed for unemployment compensation benefits.

The matter was initially heard before an examiner, who determined that Pattison was not eligible for any unemployment benefits because he had left work voluntarily. This decision was reviewed by a referee, who reversed it, holding Pattison was entitled to benefits beginning December 12, 1998. The decision of the referee was then affirmed by the Board. The trial court modified the decision of the referee and the Board by holding that Pattison was entitled to benefits beginning December 11, 1998, and ending December 24, 1998. That decision is the focus on appeal.

The principal question on appeal is whether Pattison is entitled to unemployment compensation benefits after December 24, 1998. The trial court held that he was not and limited the compensation between December 11, 1998, to December 24, 1998. In reaching this decision, the trial court applied K.S.A. 1999 Supp. 44-706(a) and K.S.A. 1999 Supp. 44-706(b)(4).

Our standard of review in matters of this nature is defined by the Act for Judicial Review and Civil Enforcement of Agency Ac-

tions (KJRA), K.S.A. 77-601 *et seq. National Council on Compensation Ins. v. Todd*, 258 Kan. 535, 538, 905 P.2d 114 (1995). The Act indicates that a reviewing court will grant relief if it determines that the agency erroneously interpreted or applied the law. K.S.A. 77-621(c)(4).

In this case, we are reviewing the decision of the trial court, which reviewed an agency action. Under those circumstances, we must first determine whether the trial court observed the requirements and restrictions placed upon it in reviewing the agency action and then make the same review of the agency's action as did the trial court. *Reiter v. City of Beloit*, 263 Kan. 74, 86, 947 P.2d 425 (1997). If the agency's action is authorized by statute, it is presumed to be valid on appeal unless it is not supported by substantial competent evidence and is so wide off the mark as to be arbitrary or capricious. *Farmers Co-op Elevator v. Kansas Employment Security Bd. of Review*, 25 Kan. App. 2d 567, 571-72, 966 P.2d 699 (1998).

We have said that persons claiming unemployment benefits are entitled to a liberal interpretation of the Employment Securities statutes. See *Farmers Co-op*, 25 Kan. App. 2d at 572. Interpretation of a statute by the agency charged with the responsibility of enforcing it is generally entitled to great judicial deference. The interpretation of the agency may, in fact, be entitled to controlling significance and, if there is a rational basis for its determination, we should uphold it on judicial review. *Wheeler v. Boeing Co.*, 25 Kan. App. 2d 632, 635, 967 P.2d 1085 (1998), *rev. denied* 266 Kan. 1116 (1999).

Despite all of the foregoing deference, we will reverse an agency decision if we find the agency's action is erroneous as a matter of law. *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. 737, 749, 973 P.2d 176 (1999). The question of whether the agency has erroneously interpreted a statute is a question over which we have unlimited review. K.S.A. 77-621(c)(4); *Pouncil v. Kansas Employment Security Board of Review*, 268 Kan. 470, 476, 997 P.2d 715 (2000).

The Board's decision was to the effect that Pattison was discharged after he had given written notice of a future intent to

resign and he was therefore entitled to unemployment benefits under K.S.A. 1999 Supp. 44-706(b)(4)(A) beginning December 12, 1998. The trial court held the Board was correct in determining that Pattison was entitled to benefits but that it erred when it did not limit those benefits to the 2-week period covered by Pattison's notice of resignation.

The controlling statute is K.S.A. 1999 Supp. 44-706(a), which provides:

"An individual shall be disqualified for benefits:

(a) If the individual *left work voluntarily without good cause attributable to the work or the employer.*" (Emphasis added.)

K.S.A. 1999 Supp. 44-706(b)(4)(A) states:

"An individual shall not be disqualified under this subsection (b) if the individual is discharged under the following circumstances:

(A) The employer discharged the individual after learning *the individual was seeking other work or when the individual gave notice of future intent to quit.*" (Emphasis added.)

There is no question that Pattison was discharged after Redline learned that he was seeking other work and had given a notice of future resignation. Under those circumstances, he was certainly entitled to unemployment compensation benefits. The question is for how long a period of time those benefits should extend.

The Board applied only K.S.A. 1999 Supp. 44-706(b)(4)(A). The trial court applied that portion of the statute in awarding Pattison compensation for the period of time from December 11 to December 24. However, the trial court applied K.S.A. 1999 Supp. 44-706(a) to the time period after December 24, 1998, because Pattison had given notice to leave work voluntarily on that date.

In *Palmer News, Inc. v. Kansas Employment Security Bd. of Review*, 24 Kan. App. 2d 655, 657, 951 P.2d 546 (1997), we said that "[t]he purpose of our employment security law is to prevent economic insecurity resulting from *involuntary* unemployment." In that case, the employee gave notice of intent to resign as of August 31, 1995. On July 26, 1995, the employee was told that he was discharged as of that date. On the date of his early discharge, he was paid a lump sum equal to the amount of salary he would

have earned up to August 31, 1995, the date he indicated he was resigning. The employee then applied for and was awarded unemployment benefits by the Board. The trial court disagreed with the Board, holding that the employee had been paid for his services up to the date of his resignation and that he had voluntarily relinquished his employment and was not entitled to any unemployment benefits. We affirmed the trial court, holding the employee had received his salary up to the effective date of his voluntary resignation and had suffered no economic harm from the early removal of his job duties.

In this case, Pattison suffered no economic harm after the effective date of his resignation. From December 25, 1998, and on, Pattison was not harmed as a result of being terminated from his position. By awarding him unemployment benefits from the date of his termination to the date of his future resignation, the trial court effectively compensated Pattison for any economic harm suffered. Any economic insecurity after December 24, 1998, was a result of his voluntary resignation and not his involuntary termination. The trial court's decision is in accordance with the purpose of the employment security law. We see no rationale or logic in concluding that one is entitled to unemployment benefits from or after the date of his or her written voluntary resignation from his or her job.

In some instances, other states have given a liberal interpretation to the unemployment compensation statutes and have held that an employee who gives notice is entitled to unemployment benefits beyond the notice period if that employee is terminated. The Nebraska Supreme Court applied that philosophy to the case of *Dillard Dept. Stores, Inc. v. Polinsky*, 530 N.W.2d 637 (Neb. 1995). We do not agree with the reasoning of the Nebraska court. Our decision is in line with that of the State of Colorado in *Diringer v. Industrial Com'n*, 712 P.2d 1091 (Colo. App. 1985).

We hold that when an employee gives a written notice of resignation indicating his or her last day of work will be a day certain and is then terminated prior to the last day of work stated in his or her notice and is not paid for the period beginning with his termination and ending the date of his or her stated resignation,

that employee is entitled to unemployment compensation from the date of termination to the date of resignation stated in his notice and not thereafter.

Pattison's separation from his employment on December 24, 1998, was voluntary and within his control. He did not suffer any economic harm beyond the resignation date given in his written notice of resignation. We affirm the decision of the trial court limiting his benefits to the 2-week notice period.

Affirmed.